**Ella COOK, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 89–1482.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1990.

Decided April 11, 1990.

Michele Lisa Levy, argued, Paula D. Scott, on brief, Neighborhood Legal Services Program, Washington, D.C., for petitioner.

Michael John Rutledge, argued, Asst. Counsel for Administrative Litigation and Legal Advice, Office of the Sol., Robert P. Davis, Sol. of Labor, Donald S. Shire, Associate Sol., Barbara J. Johnson, on brief, Counsel for Appellate Litigation, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., for respondent.

Before ERVIN, Chief Judge; BUTZNER, Senior Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Chief Judge:

In this case, Ella Cook, the widow of a coal miner, seeks review of the decision of the Benefits Review Board ("BRB" or "Board") affirming the denial of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. She contends that the Administrative Law Judge ("ALJ") and Board erred in disallowing lay testimony concerning her husband's medical condition. For the reasons stated below, we agree and remand the case to the ALJ to

consider the lay evidence in deciding whether or not to award benefits.

## I.

On November 18, 1975, Ella Cook ("Mrs. Cook"), widow of former coal miner Willie Cook, filed a claim for benefits under the Black Lung Benefits Act. The Department of Labor ("the Department") administratively denied Mrs. Cook's claim on February 5, 1981, and she requested a formal hearing.

A hearing was held before Administrative Law Judge Julius A. Johnson on January 7, 1986. At the ALJ hearing, Mrs. Cook and her granddaughter, who lived with the Cooks immediately before Mr. Cook's death, both testified about Cook's physical condition. According to their testimony, Cook had trouble breathing, suffered from a persistent cough, tired quickly from any physical exertion, and coughed up "black stuff." The record also included affidavits by two men who had worked with Cook or knew him as a coal miner. These affidavits described the conditions at the coal mine where Cook worked, and recounted what Cook did after the mine shut down. Following his coal mine employment, Cook had first worked as a trash collector but was physically unable to perform the position's tasks because of his breathing difficulty. The city for which he was working then transferred him to a less strenuous job as a school custodian.

The record indicated that on February 19, 1965, Cook was taken to the hospital where he was diagnosed as having acute myocardial infarction (a heart attack) and essential hypertension. On examination, his chest was found to be clear to percussion[1] and auscultation.[2] Cook denied any previous chest pain, shortness of breath, or ankle edema. A progress note dated February 21 also indicated that Cook's lungs were again clear. Later that day, however, Cook died. His death certificate lists the cause of death as myocardial infarction; hypertensive cardiovascular disease was listed as a significant condition contributing to death but unrelated to the heart attack.

Considering this evidence, the ALJ issued a Decision and Order denying benefits on October 30, 1986. The ALJ found that Cook had been a miner for approximately 12 years, but that Mrs. Cook was not entitled to the interim presumption under 20 C.F.R. § 727.203(a) because none of the requirements in subsections (a)(1)–(a)(5) had been met. Specifically, the ALJ held that there was insufficient medical evidence of pulmonary impairment as required by subsections (a)(1)–(a)(4) and that, because some medical evidence existed, the lay testimony could not be considered to prove disability under (a)(5). Mrs. Cook appealed to the BRB, which affirmed the denial in a Decision and Order dated April 26, 1989. Mrs. Cook then appealed these decisions to this court.

## II.

The Black Lung Benefits Act provides benefits to persons totally disabled because of pneumoconiosis or to survivors of persons who had pneumoconiosis and were totally disabled at the time of their death or whose death was caused by pneumoconiosis. The regulations codified at 20 C.F.R. § 727.203(a) provide a rebuttable presumption that a miner is totally disabled because of pneumoconiosis arising from his coal mine employment if he had been engaged in coal mine employment for at least ten years and can meet any one of the criteria set forth in subsections (a)(1) through (a)(5).

Having little medical evidence with which to invoke the presumption under subsections (a)(1) through (a)(4) in this case, Mrs. Cook attempted to introduce lay testimony that would fulfill the (a)(5) criterion. Subsection 727.203(a)(5) requires:

---

1. "Percussion" is a diagnostic procedure designed to determine the density of a body—*e.g.*, the presence of fluid in a cavity—by tapping the body lightly with a finger or plexor.

2. "Auscultation" is a diagnostic procedure which consists of listening, usually by stethoscope, to sounds made by various body structures, especially the heart and lungs.

In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrat[ing] the presence of a totally disabling respiratory or pulmonary impairment.

The issue raised now on appeal is whether the record medical evidence in this case precluded use of lay testimony to establish invocation of the interim presumption under section 727.203(a)(5).

The ALJ noted that the record contained the death certificate and hospital records of Cook's condition immediately before his death. He therefore concluded that the character and extent of this medical evidence did preclude the use of lay testimony under section 727.203(a)(5) to invoke the interim presumption. The ALJ further held that even if the lay testimony in the record were considered, it would not be sufficient to demonstrate the presence of a totally disabling respiratory or pulmonary impairment.

■ The BRB affirmed the ALJ decision that the medical evidence precluded consideration of lay testimony for purposes of establishing the interim presumption under subsection (a)(5).[3] It stated as a general rule that "[w]here the record contains medical evidence relevant to the deceased miner's respiratory or pulmonary condition, invocation pursuant to Section 727.203(a)(5) is precluded." We find that this standard excessively limits the scope of lay testimony that should be considered when a claimant attempts to invoke the presumption under section 727.203(a)(5). It contravenes the spirit of the Black Lung Benefits Act and is not required by the literal language of the regulations.

In *Dempsey v. Director, OWCP*, 811 F.2d 1154 (7th Cir.1987), the Seventh Circuit held that "in the case of a deceased miner, affidavits must be considered where the other relevant evidence is insufficient to establish entitlement, and may suffice . . . to establish entitlement where there is

no other relevant evidence." *Id.* at 1159. The court noted several practical reasons for this more inclusive standard:

> For example, widows with access only to legally insufficient medical evidence under subsections (a)(1)–(a)(4) would actually be penalized, under [a more restrictive] interpretation, in a way that widows with absolutely no medical evidence would not. A widow who is uncertain of the sufficiency of her medical evidence, moreover, might be forced to forego sections (a)(1)–(a)(4) altogether, for fear that such evidence, if found insufficient to invoke the interim presumption under the first four subsections, would then bar consideration of her affidavits under (a)(5). Finally, [a more restrictive] interpretation of sections (a)(1)–(a)(5) as establishing mutually exclusive avenues of entitlement, might deter seriously ill miners from seeking medical treatment for fear that such visits might one day lead to information which could result in a denial of benefits to their families.

*Id.* at 1160. The evidence in *Dempsey* consisted of a chest x-ray, hospital records of Dempsey's condition immediately before his death, and his death certificate. Even though the court held that the claimant's invocation of the (a)(5) presumption was not supported by substantial evidence because the evidence did not demonstrate the presence of a *totally disabling* respiratory or pulmonary impairment, *id.* (emphasis in original), it applied this liberal interpretation of the regulations in considering lay evidence.

In a more recent Seventh Circuit case, *Collins v. Old Ben Coal Co.*, 861 F.2d 481 (7th Cir.1988), the medical evidence introduced consisted of two x-rays, a pulmonary function study, and an arterial blood gas study. The court reaffirmed the *Dempsey* standard that "[w]hen the record does not contain medical evidence sufficient to invoke the interim presumption under subsections (a)(1)–(a)(4), the claimant may rely on lay evidence to invoke the interim pre-

---

**3.** The Board did not address whether the evidence, even if considered, would have been sufficient to establish the presumption.

**36**

sumption of subsection (a)(5)." *Id.* at 490. *Dempsey* has also been favorably cited and applied by the Third Circuit and the Sixth Circuit as well. *See Koppenhaver v. Director, OWCP,* 864 F.2d 287 (3d Cir.1988); *Coleman v. Director, OWCP,* 829 F.2d 3 (6th Cir.1987).

 In all of these other cases—*Dempsey, Collins, Koppenhaver,* and *Coleman*—the record medical evidence included, at least, chest x-rays. In the present case, there were no chest x-rays, no pulmonary function studies, and no arterial blood gas studies. If Mrs. Cook could not offer lay testimony concerning her deceased husband's disability, she would be completely foreclosed from presenting her claim for black lung benefits.

The Director, Office of Workers' Compensation Programs points out that the ALJ stated that even if the lay testimony in the record were considered, it would not be sufficient to demonstrate the presence of a totally disabling respiratory or pulmonary impairment. The BRB, however, did not make any findings concerning the lay evidence, and, as this court stated in *Maxey v. Califano,* 598 F.2d 874 (4th Cir.1979), unexplained conclusions, "unsupported by reasoning or evidence, [are] generally of no use to a reviewing court." *Id.* at 876.

### III.

"In determining the validity of claims ... *all relevant evidence* shall be considered, including ... [the miner's] wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials." 30 U.S.C. § 923(b) (emphasis added). In this case, the testimony of Mrs. Cook and her granddaughter and the affidavits of Mr. Cook's colleagues are certainly relevant (and, in fact, the most relevant) evidence of Cook's disability. This evidence must be considered seriously by the ALJ in assessing Mrs. Cook's claim.

Accordingly, we remand this case to the Board for further remand to an Administrative Law Judge to consider this evidence and to determine if it is sufficient to invoke the rebuttable presumption pursuant to 20 C.F.R. § 727.203(a)(5).

REVERSED AND REMANDED.