**Otto WALKER, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; Eastern Associated Coal Corporation, Respondents.**

**No. 90–1770.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1990.

Decided March 6, 1991.

John G. Sims, Logan, W. Va., argued (Pamela E. Berger and Grant Crandall, Crandall and Pyles, Charleston, W. Va., on brief), for petitioner.

Mark Elliott Solomons, argued (Laura Metcoff Klaus, Arter & Hadden, on brief), Washington, D.C., for respondents.

Before WIDENER and SPROUSE, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

We review a decision of the Benefits Review Board denying Otto Walker benefits under the Black Lung Benefits Act. 30 U.S.C. §§ 901–945 (1988). Finding that the underlying ALJ's decision was contrary to law and not based on substantial evidence, we reverse.

## I

Appellant, Otto Walker, worked as a coal miner for more than 27 years for appellee, Eastern Associated Coal Corporation (Eastern). He retired in 1983, claiming total disability based on pneumoconiosis which had resulted from his coal mining work. In August 1983, he applied for benefits under the Black Lung Benefits Act, but the Deputy Commissioner denied his claim. Walker requested and received a hearing before an ALJ who found that Walker suffered from pneumoconiosis which arose out of his employment. However, he determined that Walker was not totally disabled from performing his usual coal mine work. On appeal, the Benefits Review Board agreed.

The ALJ based his decision on the testimony of two doctors, Dr. John M. Daniel and Dr. Donald L. Rasmussen, and the respiratory examinations conducted in their respective clinics. Dr. Rasmussen specializes in respiratory diseases; Dr. Daniel is a general practitioner. Dr. Daniel diagnosed Walker as having pneumoconiosis and reported some pulmonary impairment. He concluded, however, that the mild to moderate pulmonary impairment evidenced by the respiratory studies would not prevent Walker from carrying out "the usual and customary physical requirements required of a coal miner in the performance of his job."

Dr. Rasmussen likewise noted nominal impairment reflected by the standard pulmonary and blood gas tests. However, Dr. Rasmussen also conducted a "single breath carbon dioxide diffusing capacity" test and, based primarily on that test, concluded that Walker was totally disabled from performing his usual coal mine work.

The ALJ credited Dr. Daniel's testimony, and discredited Dr. Rasmussen's. He concluded first that, because Dr. Rasmussen noted error in the reported results of one of his examinations, his testimony was not credible. He also faulted Dr. Rasmussen's reliance on the diffusing capacity test. The ALJ reasoned that since the test is not specifically listed in 20 C.F.R. § 718.204(c),[1]

---

1. Section 718.204(c) states in relevant part:
   (c) Criteria. In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (c)(1), (2), (3), (4) or (5) of this section shall establish a miner's total disability:
   (1) Pulmonary function tests showing values equal to or less than those listed in Table B1 (Males) or Table B2 (Females) in Appendix B to this part for an individual of the miner's age, sex, and height for the FEV1 test; if, in addition, such tests also reveal the values specified in either paragraph (c)(1)(i) or (ii) or (iii) of this section:
   (i) Values equal to or less than those listed in Table B3 (Males) or Table B4 (Females) in Appendix B of this part, for an individual of the miner's age, sex, and height for the FVC test, or
   (ii) Values equal to or less than those listed in Table B5 (Males) or Table B6 (Females) in Appendix B to this part, for an individual of the miner's age, sex, and height for the MVV test, or
   (iii) A percentage of 55 or less when the results of the FEV1 test are divided by the results of the FVC test (FEV1/FVC equal to or less than 55%), or
   (2) Arterial blood-gas tests show the values listed in Appendix C to this part, or
   (3) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from cor pulmonale with right sided congestive heart failure, or
   (4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section. . . .

any opinion based on the test was not credible. As indicated, the Board affirmed the holding of the ALJ that Walker had not established total disability to do his usual and customary coal mine work.

## II

The sole issue in this appeal is whether Walker was totally disabled from engaging in his usual coal mine work. Our review of a decision of the Benefits Review Board is governed by the same standard the Board applies when it reviews the ALJ's decision. *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 971 (7th Cir.1984). We must decide whether there is "substantial evidence" [2] in the record to support the ALJ's decision, *Wilson v. Benefits Review Bd.*, 748 F.2d 198, 200 (4th Cir.1984), and we, of course, review any conclusions of law *de novo*. *See Lukman v. Director, Office of Workers' Compensation Programs*, 896 F.2d 1248, 1250 (10th Cir.1990); *Jordan v. Benefits Review Bd.*, 876 F.2d 1455, 1459 (11th Cir.1989). After a careful review of the record, the parties' briefs and oral arguments, we conclude that the ALJ's decision was both contrary to law and not supported by substantial evidence.

■ Walker here contends that the ALJ erred (1) in relying on Dr. Daniel's conclusion that Walker could perform his usual coal mining employment, (2) in discrediting Dr. Rasmussen's testimony, and (3) in discrediting Dr. Rasmussen's reliance on the diffusing capacity test. Considering those contentions *seriatim*, we first are persuaded that Eastern did not show that Dr. Daniel knew the specific tasks and duties involved in Walker's employment as a "boom operator." Dr. Daniel reported that Walker should be able to "carry out the usual and customary physical requirements required of a coal miner in the performance of his job." Eastern does not contend that Dr. Daniel knew of Walker's duties as a boom operator and nothing in the record

suggests this conclusion. Eastern, however, posits that Dr. Daniel concluded that Walker's pulmonary impairment would not prevent Walker from doing any coal mine work. This, it urges, subsumed Walker's work as a boom operator. We are unpersuaded. Section 718.204(b)(1) of the applicable regulations predicates total disability on the inability of a miner to do his "usual coal mine work." This requirement does not relate to coal mine activities in the generic sense, but to the coal mine work that the involved black lung claimant was performing at the time of his disability. The ALJ's implied assumption that Dr. Daniel was familiar with Walker's coal mine work required a double presumption—that Dr. Daniel knew both Walker's specific job as a coal miner and the specific requirements imposed upon Walker to perform that job. As previously stated, Dr. Daniel's report never indicates that he knew Walker was a boom operator or that he knew the activities involved in performing that task. While it is conceivable that a physician practicing "industry" medicine might know the work requirements of every job associated with that industry,[3] attributing such encompassing knowledge to physicians in general is, under any circumstances, overly presumptuous.

In contrast to Dr. Daniel's opinion, Dr. Rasmussen based his decision of total disability on a stated understanding of Walker's duties:

Q. Would you be familiar with the job responsibilities and duties, as well as the exertional physical requirements of a boom man?

A. [Rasmussen]. Some boom men apparently require little effort. [Walker] stated that he had to frequently shovel wet coal during the day and also had to break pieces of rock with a sledge hammer quite often. So at least some of his work would be quite heavy physical work.

2. Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

3. This knowledge, however, should be testimonially established.

Thus, two doctors testified concerning Walker's ability to do his usual coal mine work—one familiar with the claimant's duties, the other not. The ALJ chose to believe Dr. Daniel's testimony and to ignore Dr. Rasmussen's. We cannot agree that Dr. Daniel's testimony amounts to substantial evidence. Whatever it may mean, "substantial evidence" cannot mean reliance on critically flawed testimony, particularly when there is reliably based testimony covering the same issues. Thus, at a minimum, a physician asserting that his or her patient is physically able to perform assigned duties should state his knowledge of the physical efforts required and relate them to the miner's impairment.[4]

■ Next, the ALJ discredited Dr. Rasmussen's testimony because the latter noted error in the reported results of his respiratory test, specifically a forced expiratory volume test (FEV1) finding. Stating that the results were erroneously reported, Dr. Rasmussen changed the finding to indicate that Walker had more respiratory ability than the report initially indicated. In making the change, he concluded that the pulmonary function test was of "relatively poor quality" and that there had been an error made with regard to the FEV1 test. The original result indicated a 1.74 value, but Dr. Rasmussen changed it to 2.25, thus changing the finding from obstructive impairment to restrictive impairment.[5] The correction favored the conclusion ultimately reached by the ALJ, to the disfavor of Walker.

The ALJ found this correction to be an "important discrepanc[y] underlying [Dr. Rasmussen's] diagnostic approach." In our view, however, Dr. Rasmussen's honest appraisal of a respiratory test performed at his clinic provides no basis for discrediting his testimony. To the contrary, it should, if anything, bolster his credibility. Moreover, Dr. Rasmussen specifically stated that he did not rely on the pulmonary function test to reach his conclusion. Instead, he based his decision primarily on the diffusing capacity test.

■ Finally, § 718.204(c) of the applicable regulations lists several tests that may be used to determine total disability. The diffusing capacity test is not one of them. The ALJ consequently discredited the validity of this test, concluding that Dr. Rasmussen's decision "concededly was not obtained from a blood gas study, or any test sanctioned by § 718.204(c)" and, therefore, was unreliable. Nowhere in the statute or regulations does it suggest that this list is exhaustive, or that any tests falling outside the list are to be deemed unreliable. In fact, Eastern concedes that the results of the diffusing capacity test may "carry the day for any [claimant]" if properly reported and validated by a qualified physician, as was done here.[6]

More importantly, the ALJ is required to consider "all relevant evidence" in making its determination of total disability. 30 U.S.C. § 923(b); *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs*, 484 U.S. 135, 139, 108 S.Ct. 427, 429, 98 L.Ed.2d 450 (1987); *Cook v. Di-*

---

4. Alternatively, Eastern argues that the ALJ could infer from the record that "pulmonary problems" did not totally disable Walker from doing his usual coal mine work. We disagree. The record fails to support this inference and, moreover, an ALJ cannot substitute his or her opinion for that of a physician. *Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (7th Cir.1988); *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir.1986).

5. Dr. Rasmussen stated that when he opined that the test was of "relatively poor quality" he meant that the findings were not entirely valid. Walker had a serious heart condition. Dr. Rasmussen stated that people with myocardial infarctions and cardiac problems, like Walker, are hesitant to perform a "really fully fledged test."

Dr. Rasmussen suggested that this hesitancy could have led to the confusion or error over the test results.

6. The ALJ also incorrectly concluded that Dr. Rasmussen questioned the reliability of the diffusing capacity test. Dr. Rasmussen stated that:

Some groups, such as the American Thoracic Society, place greater reliance on the diffusing capacity than blood gases. I don't agree with that and there are others who do not agree with that.

Far from denigrating the test, Dr. Rasmussen's comment demonstrates its acceptance by a prestigious body. His comment suggests only that he himself did not rely more on the diffusing capacity test than on the blood gas study.

*rector, Office of Workers' Compensation Programs,* 901 F.2d 33, 36 (4th Cir.1990); *see* 20 C.F.R. § 718.107. Thus, in addition to our holding that the Board's decision is not supported by substantial evidence, we conclude that the ALJ erred as a matter of law in not considering the results of the diffusing capacity test. We, of course, do not suggest what weight a fact finder should give to evidence of examinations listed in § 718.204(c) as compared to other tests not specifically delineated in the regulations. However, as a matter of law, both must be weighed, together with all other relevant evidence, including here evidence as to what effect, if any, Walker's cardiac disease has on the validity of the tests listed in § 718.204(c).

In view of the above, the judgment of the Benefits Review Board is reversed, and the case remanded.

REVERSED AND REMANDED.