41 F.3d 1505
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David WARFE, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondent.
 No. 93-2443.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 26, 1994.
Decided Dec. 6, 1994.
 
 On Petition for Review of an Order of the Benefits Review Board. (87-297-BLA)
 ARGUED: Hudson Branham, HUDSON BRANHAM, P.C., Richmond, Virginia, for Petitioner. Barry H. Joyner, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. ON BRIEF: Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, Edward Waldman, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.
 Ben. Rev. Bd.
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The petitioner is the child of a deceased miner. He has claimed that his father worked in the coal mines for over twenty-five years and died from pneumoconiosis. The petitioner filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq., which was denied in 1972 and then again in 1978. After the denial of benefits in 1978, the case was referred to an administrative law judge ("the ALJ") who also denied benefits. The petitioner appealed after the Benefits Review Board affirmed the ALJ's denial of his claim.
 
 
 2
 The petitioner, David Warfe, was born in 1939 to Wayne Warfe and Mary Hamilton. He was disabled mentally and physically from birth. His father was a miner whose coal mine employment ended in April 1948 following a stroke. His father died on February 28, 1969.
 
 
 3
 David Warfe filed a claim for benefits under the Black Lung Benefits Act on November 27, 1972. That claim was denied by the Social Security Administration. On November 13, 1978, the petitioner exercised his right to have the Department of Labor reexamine his claim, but it was again denied. On petitioner's request, the claim was then referred by the Department of Labor to the Office of Administrative Law Judges, where benefits were again denied. The ALJ, Reno E. Bonfanti, found that the miner had worked in the coal mines for four years, between 1944 and 1948. He rejected the petitioner's claim that the miner had worked twenty-five to twenty-eight years in the mines, and found that the existence of pneumoconiosis had not been established. The Benefits Review Board affirmed the denial of benefits, and the petitioner has appealed.
 
 
 4
 The court reviews decisions of the Board under the same standard as that by which the Board reviews the decision of the ALJ. Walker v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 927 F.2d 181, 183 (4th Cir.1991). The court reviews de novo the ALJ's decisions of law, and decides whether there is substantial evidence on the record as a whole supporting the ALJ's decision. Id.; Thorn v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir.1993); Pendleton v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 882 F.2d 101, 102 (4th Cir.1989).
 
 
 5
 If the petitioner could show twenty-five years or more of coal mine service by his father before June 30, 1971, he would receive the benefit of a presumption under 30 U.S.C. Sec. 921(c)(5) and 20 C.F.R. Sec. 727.204, which provides that eligible survivors of a miner (who died on or before March 1, 1978) will receive the payment of benefits "unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis." 30 U.S.C. Sec. 921(c)(5). The Director of the Office of Workers' Compensation Programs ("the Director") has conceded that if the petitioner can show twenty-five years of coal mine employment, the Director will not be able to rebut the presumption under 30 U.S.C. Sec. 921(c)(5) and David Warfe will receive an award of benefits.
 
 
 6
 The Director has agreed with the petitioner that the ALJ did not fully review and discuss the evidence presented in the hearing on the length of coal mine employment and did not adequately explain the reasons for his findings. The only evidence of the length of coal mine service in the case was the hearsay testimony of Kenneth, another son of the miner, which the ALJ chose not to credit because it was uncorroborated. The Director maintains that even uncorroborated hearsay may "constitute substantial evidence where it carries some indicia of trustworthiness or some assurance of its probative value and reliability." The ALJ, however, dismissed the testimony merely because it was unsubstantiated hearsay, without considering its reliability.
 
 
 7
 While consideration of the petitioner's evidence concerning length of coal mine service might still result in denial of his claim for benefits, the Director has recommended that we vacate the ALJ's decision on length of coal mine employment and remand for factual findings on that issue. We so rule, but still must consider the petitioner's claim, contested by the Director, that even if he is not entitled to the benefit of the presumption, he has still shown that his father died of pneumoconiosis and is therefore entitled to benefits.
 
 
 8
 The ALJ found that the x-ray evidence in the case did not establish the existence of pneumoconiosis. The only x-ray presented was one from May 26, 1967 which was read by Dr. Joseph M. Straughan for Dr. C. Jane Toothman, the miner's treating physician. Dr. Toothman diagnosed fibrosis, bronchitis, arteriosclerosis, and emphysema in 1967. In 1986, Dr. Straughan reviewed his own 1967 report of the x-ray and noted that the phrase used in the report, "reticular pattern of densities," could mean nodular fibrosis extending beyond the hilar margins. However, Dr. Jon P. Pitman also reviewed the 1967 report and stated that the phrase "reticular pattern of densities" could indicate a normal chest radiograph or one with minimal fibrosis. He also stated that the report did not use ILO classification, and that unless the study could be compared with ILO standards, it could not be evaluated adequately. Another expert, Dr. Richard A. Elmer, came to the same conclusions as Dr. Pitman. The ALJ credited the findings of Drs. Elmer and Pitman and ruled that the x-ray did not establish pneumoconiosis.
 
 
 9
 The petitioner has argued that the ALJ's interpretation of the evidence concerning the x-ray was not rational. He has pointed out that there is an inconsistency in the medical reports of one of the doctors on whom the ALJ depended, Dr. Pitman. At the beginning of his letter regarding the x-ray, Dr. Pitman stated that "[i]t is impossible to classify any radiograph from a written report which did not use the ILO classification." One paragraph later, he wrote, "but classification is possible." In light of the rest of the letter, the Director logically has pointed out that this was a typographical error, and that the doctor intended to use the word "impossible" in the second paragraph. In addition, it is for the ALJ to consider the inconsistencies in the evidence and to weigh the evidence to resolve such inconsistencies. Old Ben Coal Co. v. Battram, 7 F.3d 1273, 1278 (7th Cir.1993) ("We agree that the reports contain ambiguities and inconsistencies, but these are not decisive. When medical reports contain such problems, we defer to the ALJ, who bears the responsibility for assessing and weighing conflicting evidence."). In the instant case, the ALJ was not irrational in weighing the evidence of the doctors and determining that the x-ray could not be interpreted adequately.
 
 
 10
 The petitioner also has challenged the ALJ's reliance on the opinions of Drs. Elmer and Pitman. He contends that the ALJ was under the false impression that the two doctors had access to the original x-ray in forming their opinions, whereas they were actually only looking at the report of Dr. Straughan about the x-ray. The ALJ stated that "Drs. Richard Elmer and J. Pitman ... reviewed this x-ray." However, since the ALJ referred in the rest of the same paragraph only to Dr. Straughan's report and noted that the other two doctors were evaluating that report, it is logical to conclude that the ALJ was referring to the doctors' review of Dr. Straughan's report, not to their review of the actual x-ray itself.
 
 
 11
 Dr. Straughan's 1986 letter regarding the father, Wayne Warfe, expressed the doctor's views after having reviewed his report of 1967. It does not state that he reviewed the actual x-ray taken in 1967. The ALJ, as trier of fact, is entitled to determine the credibility of witnesses, to resolve inconsistencies, and to weigh the evidence and draw inferences. Dempsey v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 811 F.2d 1154, 1162-63 (7th Cir.1987). The ALJ found Drs. Elmer and Pitman to be more credible than Dr. Straughan and accordingly held that pneumoconiosis had not been established by the x-ray. Given the lack of specificity of Dr. Straughan's report and the testimony of two other doctors contradicting his findings, the ALJ properly weighed the evidence and made a finding based upon his assessment. There is substantial evidence supporting the ALJ's decision on the x-ray evidence.
 
 
 12
 Under 20 C.F.R. Sec. 410.454(c), even if pneumoconiosis cannot be established by x-ray evidence:
 
 
 13
 a finding of death due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine.... In any event, no claim for benefits under part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray).
 
 
 14
 Petitioner presented various items of evidence besides those concerning the x-ray: a medical report and diagnosis from Dr. Toothman, the treating physician of the deceased, an affidavit from the miner's exwife, and the testimony of Kenneth, the miner's son.
 
 
 15
 30 U.S.C. Sec. 902(b) defines "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." The ALJ concluded that Dr. Toothman's report from 1967, including a diagnosis of fibrosis, bronchitis, arteriosclerosis, and emphysema, and noting a "haziness in and about the lung roots," did not necessarily establish pneumoconiosis. One entry in the doctor's records stated that the miner had "[n]o known serious illness"; another stated that his "[b]reath sounds diminished in intensity." Dr. Toothman diagnosed congestive heart failure on one record, and generalized atherosclerosis and pulmonary emphysema (handwritten) on another. She did not, however, state that any impairment was caused by the emphysema. Wayne Warfe's final diagnosis was arteriosclerotic cardiovascular disease with cardiac arrest.
 
 
 16
 The ALJ found that the evidence failed to establish pneumoconiosis. The most reliable evidence, according to the ALJ, was Dr. Toothman's medical reports stating that the miner suffered from cardiac problems which caused his death. It was not established that the miner was severely impaired by, or died from, pneumoconiosis, or that he had a "totally disabling chronic respiratory or pulmonary impairment." We find that there is not adequate evidence to justify a reversal of the ALJ's determination that the existence of pneumoconiosis was not shown by medical evidence.
 
 
 17
 The existence of pneumoconiosis can also be established by lay evidence. 20 C.F.R. Sec. 410.454(c) provides that:
 
 
 18
 [a]s used in this paragraph, the term other relevant evidence includes ... [the miner's] spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials.
 
 
 19
 Kenneth Warfe, the miner's son, testified that his father was skinny and pale and was taking lung medication. He stated that the miner had a bad cough and had difficulty walking and breathing. The affidavit of the miner's exwife stated that he had a shortness of breath and difficulty with strenuous activity. However, Kenneth Warfe said that he saw his father only once or twice a year from 1948 until 1961, and never saw or spoke to him between 1961 and 1969. The miner's exwife was not living with him at the time of his death, as they were divorced. (According to Kenneth's testimony, she left the miner in 1948.) Since the miner's son and his exwife had very little contact with him at the time of his death and for a significant amount of time prior to his death, they could not credibly comment on his cause of death or on whether he had pneumoconiosis. The Director has pointed out that, even if the exwife and son could comment on the miner's condition at the times they saw him, they did not offer testimony on whether that condition was chronic, a requirement for finding pneumoconiosis. See 30 U.S.C. Sec. 902(b); 20 C.F.R. Sec. 410.454(c).
 
 
 20
 In Pendleton v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 882 F.2d 101 (4th Cir.1989), the claimant depended on lay evidence similar to that presented here in an attempt to establish total disability and obtain the benefit of a presumption under 20 C.F.R. Sec. 727.203(a)(5). The claimant produced lay evidence (letters and affidavits) of asthma-like symptoms, bloody cough, breathlessness, inability to walk short distances, and other breathing difficulties. The ALJ determined that the evidence was not sufficient to establish total disability, because the miner had continued to work up until his death. The court found that the lay evidence failed to establish the requisite severity of the miner's ailments. Id. at 104.
 
 
 21
 The petitioner has not established that his father's respiratory problems rose to the level of being disabling, or even that the miner's exwife and son were informed as to the miner's condition immediately before his death. Cf. Cook v. Director, Office of Workers' Compensation Programs, United States Department of Labor, 901 F.2d 33, 34 (4th Cir.1990) (ordering remand for Board to consider testimony of wife and granddaughter of deceased miner who were with him immediately before his death). Therefore, the ALJ did not err in ruling that pneumoconiosis or chronic respiratory or pulmonary impairment had not been sufficiently established by lay evidence; his decision was based on substantial evidence.
 
 
 22
 We remand the case so that the ALJ can further consider the issue of whether the length of the miner's service in the coal mines would cause the presumption to apply, establishing the petitioner's right to benefits. We, nevertheless, affirm the ALJ's finding that, absent the presumption, the petitioner has failed to establish the existence of pneumoconiosis.
 
 AFFIRMED IN PART, VACATED IN PART AND REMANDED