**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIE W. HUTCHENS,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'

No. 96-2311

COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
MABEN ENERGY CORPORATION,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(96-183-BLA)

Argued: July 10, 1997

Decided: September 9, 1997

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and NORTON, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael G. Miskowiec, Charleston, West Virginia, for
Petitioner. Edward Waldman, UNITED STATES DEPARTMENT
OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** J.
Davitt McAteer, Acting Solicitor of Labor, Donald S. Shire, Asso-

ciate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, Barry H. Joyner, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner Willie Hutchens appeals from the Benefits Review Board's affirmance of the Administrative Law Judge's denial of benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. We affirm the decision of the Board.

I.

Mr. Hutchens' claim for benefits is before this court after fifteen years of litigation. Mr. Hutchens filed a claim for benefits on July 13, 1981, and the claim was denied on November 19, 1981. The case was then transferred to the Office of Administrative Law Judges on September 19, 1985. Administrative Law Judge (ALJ) Charles P. Rippey remanded the case to the district director on October 23, 1987, who denied benefits on February 10, 1988. The case was yet again transferred to the Office of Administrative Law Judges on May 20, 1988. A hearing was held before Judge Henry W. Sayrs on January 25, 1989. The case was then transferred to Judge Thomas due to Judge Sayrs' retirement.

In an opinion dated April 18, 1990, Judge Thomas found the existence of pneumoconiosis under § 718.202(a)(1) based on the "true doubt rule." He also found the existence of pneumoconiosis under § 718.202(a)(4) and causality established pursuant to § 718.203(b). However, Judge Thomas found that Mr. Hutchens had not established

2

total disability pursuant to § 718.204(c)(1)-(c)(4), and therefore denied benefits.

On appeal, the Board remanded the case to the ALJ to reconsider the blood gas studies under § 718.204(c), reevaluate Dr. Rasmussen's opinion as to § 718.204(c)(4), and consider application of the presumption of § 718.305.

On remand, ALJ Thomas found that the evidence demonstrated total respiratory disability under § 718.204(c)(2) and (c)(4). Judge Thomas invoked § 718.305's pre-1982 presumption of total disability due to pneumoconiosis, and awarded benefits.

On appeal to the Board, the employer contended that the ALJ (1) erred in finding that the x-ray evidence established the existence of pneumoconiosis under § 718.202(a)(1); (2) erred in finding total disability under § 718.204(c); and (3) erred in his findings regarding § 718.305.

The Board noted that subsequent to the ALJ's finding that the existence of pneumoconiosis was established under § 718.202(a)(1) based on the "true doubt rule," the United States Supreme Court held that the "true doubt rule" violates section 7(c) of the Administrative Procedure Act, and that a claimant must carry the burden of proof with respect to each element of the statute. See Director, OWCP v. Greenwich Collieries, 512 U.S. 267(1994). However, the Board found this incorrect reliance on the true doubt rule to be harmless, based on the ALJ's proper finding that the existence of pneumoconiosis was established under § 718.202(a)(4).

Next, the Board found that the ALJ erred in failing to consider Mr. Hutchens' continued employment from 1981 to 1986 in evaluating Dr. Rasmussen's 1981 report opining that Mr. Hutchens was totally disabled from engaging in coal mine employment or comparable work. Therefore, the Board vacated the ALJ's finding that total respiratory disability was demonstrated, and remanded the claim for reconsideration of Dr. Rasmussen's medical opinion in light of Mr. Hutchens' employment in the mines subsequent to his examination by Dr. Rasmussen.

3

On remand, the ALJ reconsidered Dr. Rasmussen's opinion in light of Mr. Hutchens' continued employment after Dr. Rasmussen found him to be totally disabled. The ALJ reconsidered the blood gas evidence, and concluded that it did not satisfy § 718.204(c)(2). The ALJ also looked at the medical opinions of Drs. Rasmussen, Daniel, and Zaldivar, and determined that Mr. Hutchens was not totally disabled under § 718.204(c)(4). On appeal, the Board affirmed the ALJ's denial of benefits.

Medical History

Mr. Hutchens first began to experience shortness of breath and fatigue in the 1970's. On January 7, 1980, Mr. Hutchens was examined by Dr. Rasmussen, who administered a pulmonary function and an arterial blood gas study, and issued a narrative report. The pulmonary function study produced "non-qualifying" [1] results. The resting blood gas studies produced qualifying values, while the exercise blood gas studies produced non-qualifying values. In his report, Dr. Rasmussen stated that the pulmonary function study was normal, but that the arterial blood gas study indicated "marked impairment in oxygen transfer, an abnormal ventilatory response with exercise, and an abnormal cardiovascular response with exercise." He concluded that Hutchens "would appear to be incapable of performing steady work beyond light to strictly light work levels," and estimated that Hutchens had lost 60 to 65 percent of his functional capacity. On January 19, 1980, Dr. Bassali, a radiologist, took an x-ray of Hutchens' lungs, which showed numerous rounded small opacities, which he interpreted as positive for pneumoconiosis.

Dr. Rasmussen examined Hutchens on November 13, 1981, and again administered pulmonary function and arterial blood gas studies, and prepared a narrative report. The pulmonary function study produced normal, non-qualifying values. Blood gas studies were performed at rest and at three different levels of exercise; the test at the highest level of exercise was qualifying; the others were not. Dr. Ras-

_____

[1] If the results of a pulmonary function test or arterial blood-gas test show value equal to or less than those stated in the appendix to 20 C.F.R. § 718.204(c), then they establish a miner's total disability and are referred to as "qualifying."

4

mussen diagnosed a severe loss of respiratory capacity, arising out of Hutchens' coal mine employment, which totally disabled him from performing his coal mine or similar work. In regard to the blood gas study, Dr. Rasmussen stated that it revealed marked impairment of gas exchange and significant hypoxia, and indicated that Hutchens had a severe loss of respiratory functional capacity. On November 3, 1981, Dr. Bassali again took X-rays of Hutchens' lungs, and again interpreted them as positive for pneumonoconiosis.

On September 10, 1985, Hutchens was examined by Dr. Daniel at the request of Maben, Mr. Hutchens' employer. A pulmonary function study was non-qualifying, and interpreted as showing a mild obstructive defect. The blood gas study was non-qualifying, and interpreted as normal. In his narrative, Dr. Daniel diagnosed occupational pneumoconiosis and chronic obstructive pulmonary disease. Dr. Daniel concluded that Hutchens "suffers from no evidence of pulmonary dysfunction from Occupational Pneumoconiosis or from obstructed ventilation and from a pulmonary standpoint should be able to carry out the usual and customary physical requirements required of a coal miner in the performance of his duties." J.A. at 68.

Dr. Zaldivar then submitted a report based on his review of the reports, x-rays, blood gas studies, and pulmonary function studies performed by Dr. Rasmussen, Dr. Bassali, and Dr. Daniel. Dr. Zaldivar opined that Hutchens did not suffer from pneumoconiosis, and that he had only a mild obstructive pulmonary impairment that was of no clinical significance.

II.

Standard of Review

When a claimant appeals a denial of benefits under the Black Lung Benefits Act ("the Act"), the ALJ is responsible for "making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence." Doss v. Director, OWCP, 53 F.3d 654, 658 (4th Cir. 1995). The Benefits Review Board ("the Board") then reviews the ALJ's findings to determine whether they are "supported by substantial evidence in the record considered as a whole." Id. (quoting Wilson v. Benefits Review Bd., 748 F.2d 198, 199-200 (4th

5

Cir. 1984)). We review the Board's decision for errors of law and to ensure that the Board adhered to its statutory standard of review of factual determinations. Doss, at 658. Thus,"we must affirm the Board if it properly determined that the ALJ's findings are supported by substantial evidence, keeping in mind that `a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis.'" Id. (quoting Smith v. Director, OWCP, 843 F.2d 1053, 1057 (7th Cir. 1988)).

(1) Did the ALJ err in reconsidering his 1993 finding that the blood gas evidence supported a finding of total disability?

Section 411(c)(4) of the Act provides that if a miner has been employed in an underground coal mine for fifteen years or more, and if other evidence demonstrates that he has "a totally disabling respiratory or pulmonary impairment," then there is a rebuttable presumption that the miner is totally disabled due to pneumoconiosis. 30 U.S.C. § 921(c)(4). Once this presumption is established, it may only be rebutted by establishing that: (1) the miner does not have pneumoconiosis; or (2) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. See 30 U.S.C. § 921(c)(4). It is undisputed that Mr. Hutchens had more than fifteen years of underground coal mine employment, and that Mr. Hutchens' disability, if he has one, is a result of coal mine employment. Thus, the issue in this case is whether Mr. Hutchens has a "totally disabling pulmonary impairment."

The criteria for determining whether a claimant has a totally disabling pulmonary impairment are set forth in 20 C.F.R. § 718.204(c). This section provides for a presumption of total disability where specific types of evidence meet certain criteria, including:

> (1) Pulmonary function tests showing values equal to or less than those listed . . . in appendix B to this part . . ., or

> (2) Arterial blood-gas tests show the values listed in Appendix C to this part, or

6

> (3) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from cor pulmonale with right sided congestive heart failure, or
>
> (4) Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section.

20 C.F.R. § 718.204(c)(1)-(4). If the miner produces evidence sufficient to satisfy one of the four subsections above, thus establishing a presumption of total disability, the ALJ must then determine whether the record contains contrary probative evidence, such as, for example, medical opinions under subsection (c)(4) finding no totally disabling pulmonary impairment. See Lane v. Union Carbide Corp., 105 F.3d 166, 171 (4th Cir. 1997). If contrary evidence does exist, the ALJ must determine whether the contrary evidence outweighs the evidence that supports a finding of total disability. Id.

In his 1993 decision, the ALJ found that Hutchens had presented evidence satisfying (c)(2) by submitting qualifying blood gas studies. In addition, the ALJ credited Dr. Rasmussen's medical opinion reports, concluding that Hutchens had established that he was totally disabled. In doing so, the ALJ rejected Dr. Daniels' report and found that Dr. Zaldivar's report did not address the issue of the degree of disability. On appeal, the Board affirmed the ALJ's finding that Hutchens had satisfied subsection (c)(2) by submitting qualifying blood gas studies. The Board remanded the case to the ALJ, however, because the ALJ failed to consider the fact that Hutchens continued working for a period of years following Dr. Rasmussen's 1981 report opining that Hutchens was totally disabled.

On remand, in his 1995 decision, the ALJ reconsidered his earlier finding with regard to the arterial blood gas studies in spite of the

7

Board's affirmance of his 1993 decision on that issue. Hutchens argues that the ALJ erred in reconsidering the qualifying blood gas studies, and that the 1993 finding was binding on the ALJ in his 1995 decision.

Under the law of the case doctrine, a decision of a higher court establishes "the law of the case," which must be followed in all subsequent proceedings in the same case, unless (1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous and would work manifest injustice. See Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988). In the context of black lung benefit cases, the Board has previously established that unless there is a basis for an exception to the application of the law of the case doctrine, an ALJ's finding on a particular issue that has been affirmed by the Board is controlling in subsequent proceedings. See Sammons v. Wolf Creek Collieries, 18 BLR 1-24, 1-28 n.3 (Ben.Rev.Bd. 1994). In this case, the ALJ specifically found that Hutchens had submitted sufficient qualifying blood gas studies to establish the presumption contained in subsection (c)(2). On appeal, the Board affirmed that finding. Therefore, the ALJ erred in reconsidering that finding on remand.

However, this conclusion does not preclude this court from reviewing the 1993 finding of total disability under (c)(2). As noted by DOWCP, while the law of the case doctrine would preclude the ALJ from reconsidering his earlier finding, it does not preclude this court's review of that finding in a subsequent appeal. Consequently, this court will consider whether the 1993 finding was supported by substantial evidence.

(2) Was the ALJ's 1993 finding of total disability under 20 C.F.R. § 718.204(c)(2) supported by substantial evidence?

Of the three blood gas studies performed on Hutchens, the January 1980 study was qualifying when administered at rest, but non-qualifying when administered during exercise. The November 1981 study was non-qualifying at rest and at the first two levels of exercise, but qualifying when administered on the third level of exercise. The

8

September 1985 study produced non-qualifying results both at rest and during exercise.

The ALJ noted that in performing blood-gas studies, a blood sample taken after exercise is particularly useful in that exercise requires the body to oxygenate blood more quickly. The ALJ also stated that an insufficiency in gas transfers may be noted after exercise before it is evident at rest. Based on this knowledge and the fact that two of the test results were qualifying, the ALJ found that Hutchens had established the existence of a totally disabling impairment pursuant to subsection (c)(2).

The ALJ's 1993 finding is not supported by substantial evidence. The ALJ gives no explanation why the two qualifying test results are more credible than the five non-qualifying test results performed by Dr. Rasmussen.[2] While the ALJ states that an insufficiency in gas transfers may be noted after exercise where not evident at rest, the ALJ does not explain why one qualifying test taken during exercise is more credible than four other non-qualifying results during exercise. Therefore, even though it was error for the ALJ to reconsider the 1993(c)(2) finding, the ALJ correctly reversed himself on remand.

(3) <u>Was the ALJ's 1995 decision denying benefits supported by sub-<br>stantial evidence?</u>

Hutchens argues that the ALJ's 1995 finding that he is not disabled from performing his usual and customary coal mine work due to pneumoconiosis is not supported by substantial evidence based on the assertion that there is no evidence that Dr. Daniel had any idea of Hutchens' job duties either as a car dropper or heavy equipment operator. The opinion of a physician that a miner can perform his usual and customary coal mine work must be based on knowledge of the

_____

**2** There is some question as to whether the two blood gas tests performed by Dr. Daniels were reliable. As noted by the Board in its December 28, 1994 opinion, "Dr. Daniel indicated on cross-examination that when exercise blood gas studies were performed in 1985, they were using an arterial puncture within 30 seconds of stopping the exercise, but changed the protocol in 1986 to using an `indwelling A-line' and exercising at three-levels." J.A. at 192.

specific job and the job requirements of the specific miner involved. Walker v. Director, OWCP, 927 F.2d 181, 183 (4th Cir. 1991). Hutchens asserts that the only evidence of Dr. Daniel's familiarity with the work of coal miners is his statement that he has"a general idea of what type of work they do." J.A. at 85.

Respondent agrees that the medical opinion evidence is flawed, but for different reasons. First, Respondent argues that because the ALJ relied to a large extent on his evaluation of the blood gas study evidence in his consideration of the medical opinion evidence, he based his finding on an improper factor. However, as discussed above, this court finds that the ALJ's 1993 conclusion as the to the blood gas studies was flawed.

In his 1995 decision, the ALJ reconsidered the blood gas studies conducted by Dr. Rasmussen in 1980 and 1981 and concluded that the test results were inconclusive, at best. J.A. at 198. Specifically, the ALJ noted that in the 1980 study, the test conducted at rest was qualifying, while the test conducted during exercise was non-qualifying. By contrast, in the 1981 study, the tests conducted at rest and at two of three exercise levels were non-qualifying, while only the test conducted at the third exercise level was qualifying. Because only two of the seven tests conducted by Dr. Rasmussen were qualifying, the ALJ found the results inconclusive. In addition, the ALJ noted that Dr. Rasmussen reported that Hutchens' ventilatory studies and maximum breathing capacity were normal, and that Dr. Rasmussen was aware in 1981 that Hutchens was continuing to work at his regular coal mine employment. Nevertheless, Dr. Rasmussen failed to explain either the inconclusive blood gas study results or Hutchens' continued employment. The ALJ concluded that these omissions diminished the value of Dr. Rasmussen's opinion that Hutchens was totally disabled.

The ALJ next considered Dr. Daniels' opinion and found that he had sufficiently explained why a test conducted at rest might be qualifying initially and non-qualifying later. Finally, the ALJ considered Dr. Zaldivar's report and found it consistent with Dr. Daniels'. Therefore, the ALJ gave greater weight to Dr. Daniels' opinion that Hutchens was not totally disabled and was capable of performing his usual coal mine work.

10

The ALJ's decision to credit Dr. Daniels' opinion over that of Dr. Rasmussen, and to find that Dr. Daniels' opinion outweighed the two qualifying blood gas tests, was supported by substantial evidence. As set forth above, the ALJ explained why he found Dr. Rasmussen's blood gas studies to be inconclusive and why he further found Dr. Rasmussen's medical opinion to be inadequate. In addition, the ALJ explained why he credited Dr. Daniels' opinion over Dr. Rasmussen's. Although the ALJ failed to discuss the blood gas study conducted by Dr. Daniel in 1985, this omission does not render the decision inadequate, because both tests in 1985 were non-qualifying, further supporting the conclusion that Hutchens was not totally disabled.

III.

For these reasons, the court finds that the ALJ's 1995 decision in denying benefits was supported by substantial evidence. However, while this decision renders improper those benefits already paid to Hutchens, this court would not look favorably on an attempt by the Secretary to reclaim those benefits. Such action would be inequitable in light of the tortuous history of this litigation in which Hutchens has had to wait fifteen years for a definite decision by the Director.

The Board's decision is affirmed.

AFFIRMED

11