William B. LANE, Petitioner,

v.

UNION CARBIDE CORPORATION; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 95–3131.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1996.

Decided Jan. 24, 1997.

**ARGUED:** Ray Edmond Ratliff, Jr., Charleston, WV, for Petitioner. Douglas Allan Smoot, Jackson & Kelly, Charleston, WV, for Respondents. **ON BRIEF:** Mary Rich Maloy, Jackson & Kelly, Charleston, WV, for Respondent Union Carbide.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge NIEMEYER and Senior Judge HARVEY joined.

## OPINION

MURNAGHAN, Circuit Judge:

Appellant William Lane, a mine worker, filed a claim for black lung benefits pursuant to the provisions of the Black Lung Benefits Act (the "Act"), 30 U.S.C.A. §§ 901–45 (West 1986 & Supp.1996). An administrative law judge ("ALJ") disallowed the claim on the ground that, although Lane had pneumoconiosis, the disease did not totally disable him

from working. The Benefits Review Board ("BRB") affirmed the decision. Because we find that substantial evidence supports the ALJ's decision to deny benefits, we also affirm.

I.

In 1973, Lane's employer, Union Carbide Corporation ("Union Carbide"), removed Lane from working at the face of the mine because the bad dust conditions aggravated his disease. Union Carbide reclassified Lane as a general inside laborer, and he primarily worked as a belt mechanic. He ceased working in December 1983 when Union Carbide laid him off.

Lane filed a claim for benefits under the Act on March 26, 1984. In order to receive benefits under the Act, the applicable regulation provides that the miner's pneumoconiosis must totally disable him from working. *See* 20 C.F.R. § 718.204 (1996). Beginning in 1974, various doctors examined Lane and issued conflicting reports as to whether Lane's pneumoconiosis totally disabled him from working as an inside laborer.

On April 25, 1974, Dr. D.L. Rasmussen examined Lane and administered pulmonary function studies and arterial blood gas studies that tested Lane both at rest and after exercise. Dr. Rasmussen found that Lane's pulmonary function and resting arterial blood gas studies produced normal results, but the exercise arterial blood gas study revealed a significant impairment. Dr. Rasmussen concluded that Lane had an overall seventy-five percent loss of functional capacity and that he would be incapable of performing steady work beyond sedentary work levels.

On September 5, 1980, Dr. W. Olson examined Lane for the Department of Labor. Dr. Olson performed pulmonary function studies and resting and exercise arterial blood gas studies. Although he diagnosed pneumoconiosis, he found that the results of all of the studies were normal.

On May 11, 1984, Dr. Rasmussen examined Lane a second time on behalf of the Department of Labor. Dr. Rasmussen conducted pulmonary function studies and resting and exercise arterial blood gas studies. He diagnosed pneumoconiosis, and he again found that the pulmonary function and resting arterial blood gas studies yielded "normal" results, but he reported that the exercise arterial blood gas study revealed a marked impairment in Lane's respiratory functional capacity. Dr. Rasmussen concluded that Lane was totally disabled as a result of his pneumoconiosis.

Lane's counsel asked Dr. Dominic J. Gaziano to validate the arterial blood gas studies that Dr. Rasmussen had administered. On November 17, 1984, Dr. Gaziano reported that Dr. Rasmussen's studies were technically acceptable.

Dr. George L. Zaldivar examined Lane on September 18, 1985. He conducted pulmonary function and resting arterial blood gas studies, but he did not perform an exercise arterial blood gas study because of Lane's elevated blood pressure. Dr. Zaldivar diagnosed early pneumoconiosis, but he concluded that the results of all the tests were entirely normal and that no pulmonary impairment resulted from the pneumoconiosis. Dr. Zaldivar also reviewed Dr. Rasmussen's exercise blood gas studies and concluded that the studies were invalid. Dr. Zaldivar thus opined in his report that Lane suffered from no respiratory impairment that would prevent him from performing his usual coal mine work.

Dr. Joseph J. Renn examined all of the medical records in the case and rendered a report on March 19, 1987. On the basis of his review, Dr. Renn diagnosed simple pneumoconiosis, but he concluded that the disease did not prevent Lane from working as an inside laborer at the mine. Like Dr. Zaldivar, Dr. Renn discussed the exercise arterial blood gas studies that Dr. Rasmussen performed, and Dr. Renn concluded that Dr. Rasmussen's exercise study was "suspect for validity."

Dr. Alberto C. Lee examined Lane on June 25, 1987. Dr. Lee performed a physical examination, but he did not order any objective testing. Instead, Dr. Lee reviewed the arterial blood gas and pulmonary function studies of the other physicians who had examined Lane. Dr. Lee diagnosed pneumoco-

niosis, found that the arterial blood gas tests revealed a marked impairment in respiratory function, and concluded that the disease totally and permanently disabled Lane from participating in any type of coal mine work.

Finally, Dr. M. Jamil Ahmed examined Lane on June 23, 1987. Dr. Ahmed conducted pulmonary function and resting arterial blood gas studies, and he concluded that the test results were normal.

An ALJ conducted a hearing and awarded benefits to Lane on March 11, 1988. The ALJ concluded that Lane was totally disabled due to pneumoconiosis. Union Carbide appealed the decision, and the BRB remanded the case on February 22, 1990 for reconsideration of the evidence relevant to the issues of disability causation and total disability.

On remand, the ALJ again awarded benefits to Lane. The ALJ concluded that although the pulmonary function and arterial blood gas studies did not establish total disability, Dr. Rasmussen's medical report did establish total disability. Union Carbide appealed, and the BRB again vacated the ALJ's decision. The BRB affirmed the ALJ's finding that the objective tests failed to establish total disability, but it remanded the claim with instructions to reweigh the medical reports and to decide the disability causation issue. The original ALJ had retired, so the BRB transferred the claim to another ALJ.

On the second remand, the ALJ denied benefits on the ground that, although Lane had pneumoconiosis, it did not totally disable him from working. Lane appealed, and the BRB affirmed the ALJ's denial. The BRB found that the ALJ permissibly credited the medical reports of Drs. Zaldivar and Renn over the reports of Drs. Rasmussen and Lee. Lane filed a motion for reconsideration *en banc*, and the BRB issued an *en banc* decision on November 20, 1995 that affirmed the denial of Lane's claim. Lane now appeals.

## II.

■ We review the ALJ's findings, as affirmed by the BRB, to determine whether they are supported by substantial evidence and in accordance with the law. *Richardson v. Director, OWCP*, 94 F.3d 164, 167 (4th Cir.1996). We may not reweigh the evidence or substitute our views for those of the ALJ, and we must affirm if substantial evidence supports the ALJ's decision. *Wyatt v. Califano*, 618 F.2d 1079, 1080 (4th Cir.1980). The Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla' " of evidence, but only such evidence " 'as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ The benefit eligibility regulations listed in 20 C.F.R. Part 718 apply to claims, such as the instant one, filed after April 1, 1980. *Robinson v. Pickands Mather & Co.*, 914 F.2d 35, 36 (4th Cir.1990). Under Part 718, the miner must prove: 1) that he has pneumoconiosis; 2) that the disease arose out of his coal mine employment; 3) that he is totally disabled from performing his usual coal mining work; and 4) that his pneumoconiosis is a contributing cause of his total disability. *See* 20 C.F.R. § 718.201–.204 (1996); *Robinson*, 914 F.2d at 36–38. The sole issue that Lane raises in the instant appeal is whether the BRB erred in finding that substantial evidence supported the ALJ's conclusion that Lane failed to establish total disability.

The applicable regulations provide that a miner is considered "totally disabled" if pneumoconiosis prevents the miner from performing his usual coal mine employment and from engaging in gainful employment in the geographic area that he resides in. 20 C.F.R. § 718.204(b). Section 718.204(c) provides four specific methods for establishing total disability. In the absence of contrary probative evidence, the miner can establish total disability by introducing any of the following: 1) pulmonary function studies that show values equal to or less than the values listed in Appendix B of Part 718; 2) arterial blood gas studies that show the values listed in Appendix C of Part 718; 3) evidence that the miner has pneumoconiosis and suffers from cor pulmonale with right-sided congestive heart failure; or 4) a physician's report

based on medically acceptable clinical and laboratory diagnostic techniques that concludes that the miner's respiratory or pulmonary condition prevents him from engaging in his usual coal mine employment. 20 C.F.R. § 718.204(c)(1)-(4).

■ The miner can establish total disability upon a mere showing of evidence that satisfies any one of the four alternative methods, but only "[i]n the absence of contrary probative evidence." 20 C.F.R. § 718.204(c). Thus, if the miner makes such a showing, the ALJ must then determine whether the record contains contrary probative evidence. *Shedlock v. Bethlehem Mines Corp.*, 9 BLR 1–195 (Ben.Rev.Bd.1986), *aff'd on recon. en banc*, 9 BLR 1–236 (Ben.Rev.Bd.1987). If contrary evidence does exist, the ALJ must assign the contrary evidence appropriate weight and determine whether it outweighs the evidence that supports a finding of total disability. *Id.*

In the instant case, Lane clearly failed to establish total disability through pulmonary function studies. The various doctors performed five pulmonary function studies on Lane, and all of the studies showed values well above the values listed in Appendix B. Lane also failed to present any evidence that he suffers from cor pulmonale with right-sided congestive heart failure.

Thus, the only issues that we must decide are whether Lane established total disability pursuant to § 718.204(c)(2) through Dr. Rasmussen's arterial blood gas studies or pursuant to § 718.204(c)(4) through the medical reports of Drs. Rasmussen and Lee. The first ALJ opinion concluded that Lane had established total disability pursuant to § 718.204(c)(2) through Dr. Rasmussen's arterial blood gas studies. However, in the first remand, the ALJ reversed his earlier holding and concluded that the arterial blood gas studies did not establish total disability. Lane, however, argues on appeal that the arterial blood gas studies in fact do establish total disability pursuant to § 718.204(c)(2).

The various doctors performed five arterial blood gas studies on Lane that tested him both at rest and after exercise. Dr. Rasmussen's 1974 resting arterial blood gas study showed a value that failed to establish total

disability, but the exercise study showed a value sufficient to establish total disability. Dr. Rasmussen's 1984 arterial blood gas studies reached the same result, and Dr. Gaziano affirmed the validity of Dr. Rasmussen's 1984 studies. Thus, Lane adequately demonstrated evidence that supports a finding of total disability under § 718.204(c)(2).

However, the ALJ correctly found that substantial contrary probative evidence also exists. Dr. Olson's subsequent resting and exercise blood gas studies showed values that failed to establish total disability. Drs. Zaldivar and Ahmed only conducted resting blood gas studies, but they both found values that failed to establish total disability. In addition, both Dr. Zaldivar and Dr. Reed questioned the validity of Dr. Rasmussen's 1974 and 1984 exercise test results.

Substantial contrary probative evidence also exists with regard to total disability under § 718.204(c)(4). On the first remand, the ALJ concluded that although the pulmonary function and arterial blood gas studies did not establish total disability pursuant to § 718.204(c)(2), Dr. Rasmussen's medical report did establish total disability pursuant to § 718.204(c)(4). On the second remand, however, the ALJ concluded that Lane failed to establish total disability pursuant to § 718.204(c)(4).

The physician reports conflict as to whether Lane was totally disabled. Drs. Rasmussen and Lee reported that Lane was totally disabled as a result of his pneumoconiosis. However, they based their opinions entirely on the exercise arterial blood gas studies that Dr. Rasmussen performed. As stated above, Drs. Zaldivar and Ahmed persuasively questioned the validity of those studies, and Drs. Zaldivar and Ahmed both concluded that Lane's condition did not disable him from working. Moreover, Lane continued to work for nine years after Dr. Rasmussen pronounced him totally disabled and unable to work in 1974, which casts doubt on Dr. Rasmussen's report.

Thus, although the record contains evidence of total disability, the ALJ correctly determined that contrary probative evidence strongly suggests that Lane's pneumoconio-

sis did not totally disable him from performing his job as a belt mechanic. Moreover, we think that substantial evidence supports the ALJ's finding that the contrary evidence outweighs the evidence tending to establish total disability.

Lane, however, presents a variety of arguments contending that the ALJ improperly weighed the evidence. We assess each of Lane's contentions in turn.

## A.

Lane first argues that the ALJ should have given diminished evidentiary weight to the medical reports of Drs. Zaldivar and Renn, which questioned Dr. Rasmussen's exercise blood gas studies, because Drs. Zaldivar and Renn were not aware of Dr. Gaziano's validation of Dr. Rasmussen's 1984 blood gas studies at the time that they wrote their reports. In his report, however, Dr. Gaziano supplied no reason for his opinion and merely checked a box indicating that Dr. Rasmussen's tests were technically accurate. Dr. Zaldivar, on the other hand, explained in detail the medical reasons why he believed that Dr. Rasmussen's tests were inaccurate. In addition, Lane's counsel told Dr. Zaldivar about Dr. Gaziano's contrary opinion during cross examination at the hearing, but Dr. Gaziano's opinion did not alter Dr. Zaldivar's conclusion. Moreover, we must defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions. *See Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 342 (4th Cir.1996). We therefore hold that the ALJ did not err in crediting the medical opinions of Drs. Zaldivar and Renn over the medical opinion of Dr. Gaziano.

## B.

Lane also challenges the credibility of Drs. Zaldivar and Renn on the ground that their medical reports do not satisfy the Fourth Circuit's standard for total disability set forth in *Eagle v. Armco, Inc.*, 943 F.2d 509 (4th Cir.1991), and *Walker v. Director, OWCP*, 927 F.2d 181 (4th Cir.1991). In *Walker*, 927 F.2d at 183, we noted that § 718.204(b)(1) predicates total disability on the miner's inability to do his "usual coal mine work." We therefore held that a physician who asserts that a claimant can perform his assigned duties must state his knowledge of the physical efforts that the particular job requires and relate those efforts to the miner's impairment. *Id.* at 184. In *Eagle*, 943 F.2d at 512, we held that the ALJ's reliance on one physician's opinion that the miner could perform the usual activities required of a coal miner constituted error where the physician stated that he had "no idea" what the miner's job encompassed.

Lane argues that the ALJ improperly relied on the medical opinions of Drs. Zaldivar and Renn because neither physician exhibited knowledge of the specific exertional requirements of Lane's employment. However, we specifically held, in an unpublished opinion, that consideration of the exertional requirements of a miner's work was "unnecessary" in a case where the ALJ credited the reports of physicians who found that the miner "had no respiratory or pulmonary impairment at all, and, therefore, from a respiratory standpoint, could perform any kind of manual labor." *Kincaid v. Director, OWCP*, No. 94–1738, 1994 WL 645041, at *1 (4th Cir. Nov. 16, 1994). *See also Bailey v. Director, OWCP*, No. 93–1157, 1994 WL 609505, at *1 (4th Cir. Nov. 7, 1994) (holding that a physician's report need not reflect the miner's exertional requirements where the physician finds no impairment); *Sheppard v. Eastern Associated Coal Corp.*, No. 93–1933, 1993 WL 496933, at *1 (4th Cir. Dec. 2, 1993) (holding that consideration of the exertional requirements of the miner's work was not necessary "since the ALJ credited medical records which found no respiratory impairment"). We reaffirm that principle here. Although information regarding the miner's exertional work requirements mandates careful consideration in some cases, such as where the physician must determine whether an impairment of a certain degree prevents the miner from performing his usual coal mine work, such information is not relevant in a case where the physician finds no impairment at all. Thus, we hold that an ALJ may rely on a physician's report that does not discuss the exertional requirements of the miner's work if the physician concludes

that the miner suffers from no impairment at all.

In the instant case, Drs. Zaldivar and Renn both concluded that Lane did not suffer from any pulmonary impairment. Therefore, the physicians did not need to consider the exertional requirements of Lane's work.

### C.

■ Lane also contends that Dr. Zaldivar's opinion was "hostile" to the Act because Dr. Zaldivar noted that early simple coal workers' pneumoconiosis would "not be expected" to cause pulmonary impairment. In *Thorn v. Itmann Coal Co.*, 3 F.3d 713, 719 (4th Cir.1993), we rejected the opinion of a physician who stated that "simple pneumoconiosis does not 'as a rule' cause total disability." We noted that a physician's opinion based on a premise "antithetical" to the Act is not probative. *Id.* We therefore held that a physician's opinion may be discredited when the physician bases his or her conclusion "on a premise fundamentally at odds with the statutory and regulatory scheme." *Id.*

In the instant case, Dr. Zaldivar only stated that simple pneumoconiosis would "not be expected" to cause pulmonary impairment. He did not state that simple coal workers' pneumoconiosis does not "as a rule" cause pulmonary impairment. Only the latter assumption would qualify as an opinion "antithetical" to the Act. Dr. Zaldivar's analysis demonstrates that he based his opinion on the evidence in the instant case and not upon any "hostile" assumptions. He considered the possibility that Lane's simple pneumoconiosis caused a totally disabling respiratory impairment, but he concluded that such a disability was not present.

### D.

■ Lane also argues that the ALJ impermissibly relied on the resting blood gas studies that Drs. Zaldivar and Ahmed conducted. Both physicians failed to conduct exercise blood gas studies, and Lane correctly points out that the applicable regulations provide that physicians must administer an exercise study unless such a study is medically con-

traindicated. *See* 20 C.F.R. § 718.105(b)(1996).

However, in disparaging the fact that Drs. Zaldivar and Ahmed only conducted resting blood gas studies, Lane ignores the exception where an exercise study is not required: when it is medically contraindicated. Both Dr. Ahmed and Dr. Zaldivar found exercise testing contraindicated due to Lane's hypertension. Thus, Lane's argument that the ALJ should not have relied on the studies of Drs. Zaldivar and Ahmed because they failed to perform exercise studies lacks merit.

### E.

■ Lane next argues that the ALJ erred in discrediting Dr. Rasmussen's reports. Lane points to a variety of factors, such as Dr. Rasmussen's qualifications and experience, that could bolster Dr. Rasmussen's credibility. However, an ALJ may reject a medical opinion based on an invalid study. *See Director, OWCP v. Siwiec*, 894 F.2d 635, 639 (3d Cir.1990). The ALJ in the instant case permissibly found persuasive Dr. Zaldivar's invalidation of Dr. Rasmussen's underlying exercise blood gas study. Moreover, an ALJ does not have to accept the opinion or theory of any given medical witness. The ALJ may weigh the medical evidence and draw his own conclusions. *White v. Newport News Shipbuilding & Dry Dock Co.*, 633 F.2d 1070, 1075 (4th Cir.1980). Lane, in effect, asks us to reweigh the evidence, and we may not do so on appellate review.

### F.

■■ Next, Lane contends that the ALJ erred in failing sufficiently to consider the reports of Drs. Gaziano and Lee. Although Lane does not state the basis for his challenge, we presume he contends that the ALJ violated the Administrative Procedure Act (the "APA"), 5 U.S.C.A. § 557(c)(3)(A) (West 1996), which provides that all ALJ opinions must include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." In order to comply with the APA, the ALJ must consider all of the relevant evidence. *See Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir.1978).

Despite Lane's contentions, however, the ALJ summarized, considered, and weighed the reports of both Dr. Lee and Dr. Gaziano in his opinion. He fully explained why he thought that the contrary probative evidence outweighed their opinions. Thus, the record itself refutes Lane's contention that the ALJ failed to consider those reports.

### G.

Finally, Lane argues that because the ALJ originally awarded benefits in 1988 and on remand in 1991, extraordinary justification is required for the ALJ's denial of benefits on the second remand. He contends that the ALJ erred on the second remand when he reversed, without explanation, the prior ALJ's findings.

Lane's argument lacks merit. The BRB held that the prior ALJ decision contained errors. The BRB vacated the prior ALJ's finding and instructed the ALJ to reconsider the relevant evidence, with no instructions or assurances that the ALJ was to reach the same result. When the BRB enters such a remand order, the ALJ may fully consider whether the claimant satisfied his or her burden of proving the element at issue. Lane concedes that the BRB's decision returned the parties to the *status quo ante* the prior ALJ's decision, but he nonetheless argues, without citation to authority, that the ALJ had to explain his reasons for a contrary finding on the second remand. Lane's theory, that the two prior awards of benefits entitle him to a presumption of benefits, is untenable. The ALJ did not err when he reconsidered the weight of the relevant evidence, pursuant to the BRB's order, on the second remand.

### III.

In summary, we find no defects in the opinions of Drs. Zaldivar and Renn that required the ALJ to discount their credibility. Although Lane produced medical opinions in support of his benefits claim, the record also contains medical opinions that refute total disability. We must affirm the ALJ's resolution of the conflicting medical evidence as long as substantial evidence supports his resolution. We find that substantial evidence does support the ALJ's decision to deny benefits, and we therefore affirm.

*AFFIRMED.*