**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICKEY G. BOLEN,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'

No. 97-2544

COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
EASTERN ASSOCIATED COAL
CORPORATION,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(97-0119-BLA)

Submitted: April 30, 1998

Decided: June 5, 1998

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

S.F. Raymond Smith, RUNDLE & RUNDLE, L.C., Pineville, West
Virginia, for Petitioner. Mark E. Solomons, Laura Metcoff Klaus,
ARTER & HADDEN, L.L.P., Washington, D.C., for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mickey Bolen petitions for review of a decision of the Benefits Review Board ("Board") affirming the administrative law judge's ("ALJ") denial of his application for black lung benefits pursuant to 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1998). The ALJ reviewed this claim under 20 C.F.R. Part 718 (1997), of the applicable regulations, and denied benefits based on his determination that the evidence of record was insufficient to prove the existence of pneumoconiosis. To establish entitlement under Part 718, a miner must prove: 1) that he has pneumoconiosis; 2) that the disease arose out of his coal mine employment; 3) that he is totally disabled from performing his usual coal mining work; and 4) that his pneumoconiosis is a contributing cause of his total disability. See Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997). Because Bolen failed to establish the first critical element, the ALJ did not address the remaining elements. The Board found that the ALJ properly weighed the evidence relating to the issue of the presence of pneumoconiosis and, accordingly, affirmed. We must affirm the Board's decision if it properly decided that the ALJ's decision is supported by substantial evidence and is in accordance with law. See Doss v. Director, Office of Workers' Compensation Programs, 53 F.3d 654, 658 (4th Cir. 1995).

Under Part 718, a claimant may establish pneumoconiosis by means of: 1) x-rays, 2) biopsy or autopsy evidence, 3) invocation of one of the presumptions at 20 C.F.R. §§ 718.304-306, or 4) medical reports. The record contains no autopsy or biopsy evidence, and Bolen concedes that none of the presumptions are applicable. Moreover, he concedes that the x-ray evidence is insufficient to establish pneumoconiosis. The record contains only a single positive x-ray interpretation that conflicted with the uniformly negative interpretations supplied by eleven other readers possessing superior qualifica-

2

tions. Thus, Bolen could establish pneumoconiosis only through medical opinion evidence.

Of the three physicians who addressed this issue, only Dr. Rasmussen found the disease present. In his initial report, Dr. Rasmussen found pneumoconiosis based on the miner's history of coal dust exposure and the one positive x-ray interpretation of record, rendered by Dr. Patel. He also found chronic obstructive pulmonary disease due to coal dust exposure and cigarette smoking based on the miner's chronic cough and chronic airway obstruction. After more qualified readers interpreted Dr. Patel's x-ray and other films negatively for pneumoconiosis, Dr. Rasmussen submitted a supplemental report, stating that his opinion remained unchanged because x-rays were an imperfect tool for diagnosing pneumoconiosis and because he still believed that there was "no basis for excluding Mr. Bolen's coal dust exposure as a significant contributing cause to his disabling respiratory insufficiency including a significant contributing cause of his emphysema." To support his opinion, he cited medical literature which he interpreted to conclude that coal dust exposure can cause chronic obstructive lung disease and the same type of emphysema produced by coal dust exposure.

The ALJ effectively discredited Dr. Rasmussen's reports. He found that Dr. Rasmussen's finding of clinical pneumoconiosis was undermined by his reliance on an x-ray interpretation which was overwhelmingly refuted by the interpretations of more qualified readers. Moreover, Dr. Rasmussen's supplemental report, which effectively found "legal" pneumoconiosis by attributing the miner's emphysema and obstructive lung disease to coal dust exposure, was generic, citing only to articles discussing potential connections between coal dust exposure and various respiratory problems, but not explaining how Bolen's specific symptoms or test results supported the conclusion that coal dust exposure contributed to his specific respiratory ailments. Although Dr. Rasmussen's reports reflect that he recorded the miner's symptoms, pertinent history, and conducted laboratory testing, if his efforts produced any information supporting a finding of pneumoconiosis, his report fails to explain how this is so.

Bolen contends on appeal that the ALJ's decision impermissibly relied on the "sheer volume of negative x-rays" that employer was

3

able to produce, in violation of alleged statutory and regulatory prohibitions against the denial of claims based upon negative x-rays. Initially, we note that the relevant statutory and regulatory provisions prohibit denial of a claim based solely on a negative x-ray. See 30 U.S.C. § 923(b) (1994); 20 C.F.R. § 718.202(b) (1997); Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 484 U.S. 135, 151 (1987). In this case, multiple x-rays were overwhelmingly interpreted negatively.

Moreover, any prohibitions against the use of negative x-rays cannot prevent denial of a claim where the claimant produces no probative evidence affirmatively establishing the critical elements of a claim, because the claimant must prove his case by a preponderance of the evidence. See Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 512 U.S. 267 (1994) (finding that claimant must prove case under preponderance standard). We have stated that the ALJ properly discredited Dr. Rasmussen's finding of clinical pneumoconiosis because it was primarily based on a discredited x-ray. Moreover, the ALJ properly discredited Dr. Rasmussen's finding of legal pneumoconiosis because he provided no basis for such a conclusion in Bolen's specific case. Hence, Bolen cannot carry his burden regardless of the weight the ALJ gave to the negative x-rays or to the other evidence supporting a finding of no pneumoconiosis.

We find, however, that the ALJ provided proper reasons for crediting the reports of employer's physicians in this case, and that, contrary to Bolen's assertions, neither the ALJ nor the employer's physicians placed undue emphasis on the negative x-ray evidence. The physicians finding no pneumoconiosis, Drs. Zaldivar and Tuteur, only briefly noted that there was no radiographic evidence of pneumoconiosis in this case. Most of their discussions related to the miner's symptoms, physical exams, and objective studies. They concluded that while the miner exhibited many indices suggestive of an obstructive disorder of the type commonly caused by cigarette smoking, he exhibited no indices that are specific to a coal-dust-induced respiratory disease. For example, on physical examination the miner exhibited no decreased lung expansion or persistent crackling sounds on inspiration, as one expects to find where pneumoconiosis is present. Moreover, his symptoms of cough, expectoration, wheezing, and

4

chest pain were, according to Dr. Tuteur, "not regular features of coal workers' pneumoconiosis."

His objective studies showed no evidence of restriction, but of a purely obstructive impairment. The miner's lung volumes were not reduced, consistent with pneumoconiosis, but were instead 135% of the volume predicted, indicating air trapping. His blood gas tests were normal at rest, but indicated mild hypoxemia upon exercise. According to Drs. Zaldivar and Tuteur, all of these indices were consistent with an obstructive impairment attributable to smoking and heart disease. Conversely, Bolen exhibited no indices of a pulmonary problem specifically related to coal dust exposure. Coupling these indices with the negative x-ray evidence, the miner's past history of heart problems (including myocardial infarction), and his lengthy smoking history (40 years and continuing, smoking at least one pack every day), Drs. Zaldivar and Tuteur opined that coal dust exposure did not contribute to the miner's obstructive lung disease.

The ALJ found that these reports were better reasoned and better supported than the opinion of Dr. Rasmussen. He also noted that, being board-certified in the field of pulmonary diseases, these physicians possessed credentials superior to those of Dr. Rasmussen. Each of these reasons is a proper basis for crediting a medical opinion over a conflicting opinion. See Underwood v. Elkay Min., Inc., 105 F.3d 946, 951 (4th Cir. 1997).

We also note that crediting these reports does not, contrary to Bolen's assertion, violate our holding in Warth v. Southern Ohio Coal Co., 60 F.3d 173, 174-75 (4th Cir. 1995), that a physician's opinion that coal dust exposure can never cause obstructive impairment is inimical to the Black Lung Benefits Act. While Dr. Tuteur's report disputes Dr. Rasmussen's view that the studies cited by Dr. Rasmussen prove that coal dust exposure causes obstruction, Dr. Tuteur does not state that this is his personal opinion. Nor is there any indication that his opinion was based on such an assumption.

Accordingly, the decision of the Board is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5