UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-2140

YOGI MINING COMPANY,

Petitioner,

versus

TERRY M. FIFE; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(02-520-BLA)

Argued:  September 19, 2005        Decided:  December 7, 2005

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Ronald Eugene Gilbertson, BELL, BOYD & LLOYD, Washington,
D.C., for Petitioner.  Terry Gene Kilgore, WOLFE, WILLIAMS &
RUTHERFORD, Norton, Virginia, for Respondents.  **ON BRIEF:** Joseph E.
Wolfe, W. Andrew Delph, Jr., WOLFE, WILLIAMS & RUTHERFORD, Norton,
Virginia, for Respondents.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

This appeal arises from a claim for benefits made by respondent Terry M. Fife in 1998 under the Black Lung Benefits Act (the "Act"). See 30 U.S.C. §§ 901-945. By this proceeding, petitioner Yogi Mining Company, Inc., challenges the April 2003 decision of the Benefits Review Board (the "Board"), which affirmed an award of black lung benefits made to Fife by an administrative law judge (the "ALJ"). Yogi Mining maintains on appeal that the evidence was insufficient to support the ALJ's finding that Fife was totally disabled due to pneumoconiosis, commonly known as black lung disease. As explained below, we affirm the Board.

I.

A.

Terry Fife worked underground in the coal mines of southwest Virginia for seventeen years, most recently as a roof-bolter for Yogi Mining. When he was laid off by Yogi Mining in 1993, Fife's breathing problems were so severe that he was never able to return to work. At the time, Fife lived with his wife and disabled dependent child in Buchanan County, Virginia.

On December 17, 1998, Fife filed a claim for black lung benefits with the Department of Labor's Office of Workers'

Compensation Programs (the "OWCP").[1]  By his claim, Fife asserted that he was due benefits under the Act because he was totally disabled due to pneumoconiosis.  Pneumoconiosis is a chronic dust disease of the lungs that arises out of work in the coal mines. Under the regulations implementing the Act, pneumoconiosis may be diagnosed by X-ray, biopsy, or other medical evidence.  See 20 C.F.R. § 718.202.  Complicated pneumoconiosis, the more severe form of black lung disease, is characterized by large opacities, or spots, on the lungs, and carries with it the irrebuttable presumption of total respiratory disability.  See id. § 718.304. Simple pneumoconiosis, a less severe form of the disease presenting smaller spots on the lungs, carries no presumption of disability, and it requires a miner seeking black lung benefits to make an additional showing to establish total respiratory disability and receive benefits.  See id. § 718.204.

In his claim for benefits, Fife explained that he was "unable to breathe freely at any time" and asserted that a shortness of breath rendered him "unable to perform short or long term tasks." Fife also maintained that "dust in the mines and in and around other jobs" made it hard for him to breathe.  In response to Fife's application, the OWCP required Fife to be evaluated by two doctors,

---

[1]The OWCP, a party in the proceedings before the ALJ and the Board, has not participated in this appeal.

who were asked to determine whether his claim for black lung benefits was substantiated by the medical evidence.

Fife was first examined for the OWCP on February 12, 1999 by Dr. J. Randolph Forehand. Forehand was a certified "B reader" of X-ray evidence, that is, he had passed a specially-designed proficiency test administered by the Department of Health and Human Services for evaluating X-rays for the presence of pneumoconiosis and other lung diseases. See 20 C.F.R. § 718.202(a)(1)(ii)(E). After conducting a chest X-ray, a pulmonary function study, an electrocardiogram, and a physical examination of Fife, Forehand concluded that "complicated pneumoconiosis is the sole factor contributing to [Fife's] total pulmonary disability." In his report to the OWCP, completed on February 12, 1999, Forehand observed that Fife complained of shortness of breath, cough, chest pain, and orthopnea (the inability to breathe unless sitting or standing straight). Forehand also noted that Fife had been smoking a pack of cigarettes per day since the 1970s. Forehand did not test Fife for tuberculosis, but recommended that such a test be conducted in order to exclude tuberculosis as an "additional diagnosis."[2]

---

[2]A diagnosis of tuberculosis does not necessarily exclude the possibility that a miner also suffers from pneumoconiosis. A miner may be diagnosed with both black lung disease and tuberculosis, or tuberculosis may be an alternative explanation for lesions on a miner's lungs. See Wolf Creek Collieries v. Robinson, 872 F.2d 1264, 1270 (6th Cir. 1989). Here, Dr. Forehand diagnosed Fife as suffering from complicated pneumoconiosis (carrying an irrebuttable

4

The February 12, 1999 X-ray taken by Dr. Forehand was then reviewed by Dr. Nicholas Sargent, who submitted his report dated March 1, 1999 to the OWCP. Sargent was dually qualified — that is, he was a B-reader as well as a board-certified radiologist (a "B/BCR"). See 20 C.F.R. § 718.202(a)(1)(ii)(C). In his report to the OWCP, Sargent opined that the Forehand X-ray showed large opacities on Fife's lungs indicative of simple pneumoconiosis. Sargent was unable to conclusively determine, however, whether the X-ray showed complicated pneumoconiosis, tuberculosis, or some other type of infectious disease.

On the basis of these two expert opinions, the OWCP, on May 10, 1999, made an Initial Finding of Entitlement (the "OWCP Finding"), granting Fife's claim and concluding that he was entitled to an award of total disability benefits due to complicated pneumoconiosis. On August 5, 1999, Yogi Mining requested a formal hearing to challenge the OWCP Finding, pursuant to 20 C.F.R. § 725.421(a).[3] The matter was then referred to the ALJ.

---

presumption of total respiratory disability), independent of any tuberculosis evaluation. Forehand explicitly indicated that a diagnosis of tuberculosis would only be in addition to his primary diagnosis of complicated pneumoconiosis.

[3]The pertinent regulation provides that "[i]n any claim for which a formal hearing is requested or ordered . . . the district director [of OWCP] shall refer the claim to the Office of Administrative Law Judges for a hearing." 20 C.F.R. § 725.421(a).

B.

The hearing requested by Yogi Mining was conducted before the ALJ on April 12, 2000, in Abingdon, Virginia, where testimony was presented by Fife and the written medical opinions of eight doctors were received into the record. These opinions included those of Drs. Forehand and Sargent for the OWCP, two doctors' reports submitted by Fife (Drs. Michael S. Alexander and J.P. Sutherland), and four doctors' reports submitted by Yogi Mining (Drs. Abdul Dahhan, William W. Scott, Jr., Peter G. Tuteur, and Paul S. Wheeler). The ALJ also received into evidence the depositions of two of Yogi Mining's doctors, Wheeler and Dahhan. At the ALJ hearing, Yogi Mining was represented by counsel, while Fife was assisted by a benefits counselor serving as a lay representative.

The issue before the ALJ was whether the evidence was sufficient to establish that Fife was totally disabled due to complicated pneumoconiosis, as had been determined in May 1999 by the OWCP Finding. As a general proposition, the medical evidence presented to the ALJ established that there were significant abnormalities in Fife's lungs, but the experts disagreed on whether those abnormalities were caused by pneumoconiosis or some other disease, such as tuberculosis or emphysema. The evidence before the ALJ is further summarized below.

6

1.

First, Fife testified that his coal mine employment had been exclusively underground and involved very dusty conditions. He explained to the ALJ that he could not return to work in the mines even if a job became available because "he could not breathe enough to keep up" and he "could not handle the dust." Fife also acknowledged that he had smoked a pack of cigarettes per day since the 1970s.

In addition to the OWCP Finding of complicated pneumoconiosis, Fife presented the ALJ with the opinions of Dr. Alexander (B/BCR), who had evaluated Fife's records for the ALJ proceeding, and Dr. Sutherland, Fife's treating physician. Alexander evaluated an X-ray of Fife's chest taken on December 21, 1999, the most current X-ray considered at the hearing. In his March 4, 2000 report, submitted to the ALJ, Alexander observed that the X-ray indicated the presence of large opacities, and he concluded that Fife suffered from "complicated coal worker's pneumoconiosis" as a result.

Fife also submitted to the ALJ the March 9, 2000 report of Dr. Sutherland, who had been Fife's treating physician since 1992. Sutherland affirmed that Fife was "permanently and totally disabled as a result of obstructive and restrictive lung disease associated with pneumoconiosis." Importantly, Sutherland explained that he had evaluated Fife for tuberculosis but had found no sign of the

7

disease.  He further observed that he found "no evidence of any type of [Ghon] lesions with granulomatous disease except for interstitial changes which would be consistent with pneumoconiosis."[4]  Finally, Sutherland related that Fife had recurrent shortness of breath and severe wheezing, and that his X-rays showed "interstitial scar tissue in all 5 lung fields," indicating "obstructive and restrictive lung disease."

2.

In challenging the OWCP Finding that Fife suffered from complicated pneumoconiosis, Yogi Mining presented the ALJ with the opinions of its four doctors (Drs. Dahhan, Scott, Tuteur, and Wheeler), each of whom ultimately opined that Fife probably did not suffer from complicated pneumoconiosis.  They presented no clear consensus, however, on how to explain the abnormalities present in Fife's lungs.

On July 28, 1999, Dr. Dahhan examined Fife for Yogi Mining, taking an X-ray and a computer tomography ("CT") scan of Fife's chest, as well as performing other pulmonary tests.  Dahhan, a B-reader, initially found evidence of "large opacities" on Fife's X-ray and concluded that simple pneumoconiosis was indicated.  This X-ray of Fife's chest was later read by both Dr. Wheeler (B/BCR)

---

[4]"Ghon lesions" are pulmonary abnormalities indicative of tuberculosis.  See Dorland's Illustrated Medical Dictionary, 716, 766 (30th ed. 2003). "Granulomatous disease" is a type of disease characterized by lesions that may be caused by an infection, such as tuberculosis.  Id. at 795-797, 1962.

and Dr. Scott (B/BCR), who disagreed with Dahhan's conclusion.  In Wheeler's opinion, the abnormalities shown on the Dahhan X-ray "could" be evidence of pneumoconiosis, but it more likely revealed tuberculosis or emphysema.  In Scott's opinion, Dahhan's X-ray of Fife's chest was "compatible" with tuberculosis.  In their reports, as filed with the ALJ, Scott and Wheeler opined that they did not find conclusive evidence of pneumoconiosis on the CT scan Dahhan had taken on July 28, 1999, nor on the X-rays of Fife's chest taken on August 27, 1998, and February 12, 1999.  Both Scott and Wheeler acknowledged, however, that pneumoconiosis could account for the abnormalities on Fife's lungs.  Wheeler's deposition, conducted ex parte by Yogi Mining on April 4, 2000, was also submitted by Yogi Mining to the ALJ.  In his deposition, Wheeler testified that the lung abnormalities reflected on Fife's X-rays appeared more "compatible" with tuberculosis, although he was "not absolutely certain it's tuberculosis."

Upon consideration of the views of Drs. Scott and Wheeler, Dr. Dahhan changed his diagnosis of Fife and provided Yogi Mining with a new opinion, dated March 27, 2000, concluding that Fife did not suffer from pneumoconiosis at all.  Yogi Mining also submitted Dahhan's ex parte deposition, taken on April 6, 2000.  Dahhan testified that he changed his diagnosis of Fife's condition after considering the reports of Scott and Wheeler, and Dahhan asserted that his final opinion was that Fife did not have pneumoconiosis.

9

In Dahhan's revised assessment, the abnormalities that appeared on Fife's X-rays were likely due to some previous infection, such as tuberculosis.

In addition to these three doctors, Yogi Mining submitted to the ALJ the report of Dr. Tuteur, a pulmonary specialist, dated October 5, 1999. Tuteur had considered the pulmonary function tests performed on Fife by Forehand and Dahhan, as well as the reports of Drs. Dahhan, Forehand, Sargent, Scott and Wheeler. Tuteur opined that Fife did not suffer from any reduced lung capacity, nor from any abnormal blood gas exchange typical of pneumoconiosis. He also noted that Fife had no history of tuberculosis, and he attributed Fife's lung abnormalities to a "cigarette-smoke induced condition."

C.

On August 30, 2000, after considering the evidence presented to him, the ALJ concluded that the X-ray readings and medical opinions established by a preponderance of the evidence that Fife suffered from complicated pneumoconiosis, and that he was entitled to the presumption of total disability, pursuant to 20 C.F.R. § 718.304. Fife v. Yogi Mining Co., No. 99-1207, slip op. at 24 (Aug. 30, 2000) ("ALJ Decision I"). In ruling that Fife was entitled to black lung benefits, the ALJ found that: (1) Fife had been employed for seventeen years in the coal mines; (2) his claim

10

for benefits had been timely filed; (3) Yogi Mining was the responsible operator; (4) Fife had two dependents for the purposes of augmented benefits; and (5) Fife's benefits should have commenced as of February 1999, when he was first diagnosed with complicated pneumoconiosis by Dr. Forehand. Id. at 3-6.

Yogi Mining then appealed ALJ Decision I to the Board, contending that it was not supported by substantial evidence. More specifically, Yogi Mining maintained that the ALJ had improperly relied on the opinion of Dr. Sutherland, had impermissibly discredited the views of the Yogi Mining doctors, and had failed to properly weigh the CT scan evidence. Fife, who was without counsel, did not respond to Yogi Mining's appeal.

On October 17, 2001, the Board ruled on Yogi Mining's appeal, affirming ALJ Decision I in part, vacating it in part, and remanding Fife's claim to the ALJ to: (1) determine whether Dr. Sutherland's opinion was sufficiently reasoned and documented; (2) explain more comprehensively his reasons for discounting the views of Yogi Mining's doctors; and (3) reweigh all the relevant evidence, including the CT scan evidence, and determine whether Fife had established by a preponderance of the evidence the existence of complicated pneumoconiosis. Fife v. Yogi Mining Co.,

11

No. 00-1197, slip op. at 4-6 (B.R.B. Oct. 17, 2001) ("Board Decision I").[5]

In response to Board Decision I, the ALJ filed his second decision on March 26, 2002 ("ALJ Decision II"), incorporating ALJ Decision I by reference, and again awarding black lung benefits to Fife.  Fife v. Yogi Mining Co., No. 99-1207, slip op. at 4, 18 (Mar. 26, 2002).  In addressing the remand issues, the ALJ explained that he had not relied on Dr. Sutherland to diagnose complicated pneumoconiosis.  Id. at 14.  Instead, the ALJ had relied on Sutherland's opinion to rule out a diagnosis of tuberculosis because his opinion was sufficiently well-reasoned and documented on that issue.  Id.  The ALJ further explained that the opinions of the Yogi Mining doctors had been discounted because they were equivocal and failed to adequately explain contrary data. Id. at 14-18.  Finally, the ALJ again concluded that, on the basis of the evidence, Fife had established that he suffered from complicated pneumoconiosis.  Id. at 18.  The ALJ's earlier award of black lung benefits to Fife made in ALJ Decision I was thus sustained.  Id. at 19.

Yogi Mining then appealed ALJ Decision II to the Board, contending that the ALJ had not complied with the remand made in Board Decision I.  Specifically, Yogi Mining contended that the ALJ

---

[5]Yogi Mining did not, in its appeal of ALJ Decision I, contest the ALJ's other findings.  See Board Decision I at 3.

12

had failed to reevaluate the evidence, had failed to adequately discuss the CT scan evidence, and had again rendered a decision not supported by the evidence. Fife, proceeding pro se, did not respond to Yogi Mining's second appeal.

On April 24, 2003, a panel majority of the Board affirmed ALJ Decision II, with one member dissenting. Fife v. Yogi Mining Co., No. 02-0520, slip op. at 8-9 (B.R.B. Apr. 24, 2003) ("Board Decision II"). Yogi Mining then moved for reconsideration by the Board en banc, which was granted on July 14, 2004. On reconsideration en banc, the Board reaffirmed the ALJ's award of benefits to Fife by a 2-2 split vote. Fife v. Yogi Mining Co., No. 02-0520, slip op. at 4-5 (B.R.B. July 14, 2004).[6] On September 8, 2004, Yogi Mining filed a timely petition for review by this Court, and we possess jurisdiction pursuant to 33 U.S.C. § 921(c).


II.

We review an ALJ decision affirmed by the Board to determine whether it is in accordance with the law and supported by substantial evidence. Island Creek Coal Co. v. Compton, 211 F.3d 203, 207 (4th Cir. 2000); Piney Mountain Coal Co. v. Mays, 176 F.3d

---

[6]Under the relevant regulations, a decision by a Board panel is not disturbed by a grant of reconsideration en banc unless three permanent members vote to vacate or modify the original panel decision. 20 C.F.R. § 802.407(d). Here, two members having voted to affirm and two others having voted to vacate and remand, Board Decision II, rendered by the panel on April 24, 2003, was left undisturbed.

753, 756 (4th Cir. 1999). Substantial evidence "consists of more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Island Creek Coal, 211 F.3d at 207-208 (internal quotation marks omitted). In conducting our review, we are not to "reweigh the evidence or substitute our views for those of the ALJ," Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997), but we must consider "whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence," Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). In our review, we confine ourselves to the grounds upon which the Board based its decision. See Grigg v. Dir., OWCP, 28 F.3d 416, 418 (4th Cir. 1994). As always, we review the Board's conclusions of law de novo. Milburn Colliery, 138 F.3d at 528.

III.

In order to be entitled to black lung benefits, Fife was obliged to establish four elements: (1) he has pneumoconiosis; (2) his pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability. See 20 C.F.R. §§ 718.201-204; see also Milburn Colliery Co. v. Hicks, 138 F.3d 524, 529 (4th Cir. 1998). As we explained earlier, an irrebuttable presumption of total disability

14

arises from a diagnosis of complicated pneumoconiosis. See 20 C.F.R. § 718.304. Under the Act, a miner is deemed to suffer from complicated pneumoconiosis if he has satisfied one of the following criteria: (A) an x-ray of his lungs shows at least one opacity greater than one centimeter in diameter; (B) a biopsy reveals "massive lesions" in his lungs; or (C) a diagnosis by other means reveals a result equivalent to either (A) or (B). See 30 U.S.C. § 921(c)(3); E. Assoc. Coal Corp. v. Dir., OWCP, 220 F.3d 250, 256 (4th Cir. 2000). If a coal miner who is suffering from pneumoconiosis was employed for ten years or more in the coal mines, there is a rebuttable presumption that his pneumoconiosis arose out of such employment. See 20 C.F.R. § 718.203(b). As we have repeatedly observed, it is within the ALJ's discretion to determine whether a black lung claimant suffers from complicated pneumoconiosis, so long as his decision is rational and based on substantial evidence. See Underwood v. Elkay Mining, 105 F.3d 946, 949 (4th Cir. 1997); E. Assoc. Coal, 220 F.3d at 256. Subject to the substantial evidence rule, it is the province of the ALJ to make credibility determinations and to resolve inconsistencies or conflicts in the evidence. See Underwood, 105 F.3d at 949.

In this appeal, Yogi Mining contends that ALJ Decisions I and II were erroneous for three reasons: First, the ALJ improperly relied on the opinion of Dr. Sutherland, Fife's treating physician; second, the ALJ failed to provide valid reasons for discrediting

15

the opinions of the Yogi Mining doctors; and, third, the ALJ failed to consider the relevant CT scan evidence.  In response, Fife, now represented by counsel, maintains that the ALJ's findings are supported by substantial evidence and that Board Decision II was correct in affirming the ALJ's award of black lung benefits to Fife.  We assess Yogi Mining's contentions in turn.

A.

By its first contention, Yogi Mining asserts that the ALJ should not have relied upon Dr. Sutherland's opinion because it did not meet the requirement that it be "reasoned," and it did not establish the existence of complicated pneumoconiosis.  As explained below, however, the ALJ did not rely solely on Sutherland's report to establish complicated pneumoconiosis, and he sufficiently articulated his reasons for concluding that Sutherland's opinion constituted a well-reasoned and documented opinion.

First, contrary to Yogi Mining's characterization, the ALJ did not rely exclusively on Dr. Sutherland's opinion to establish complicated pneumoconiosis.  Indeed, the ALJ explicitly acknowledged that Sutherland's opinion was "insufficient to constitute a diagnosis of complicated pneumoconiosis."  ALJ Decision II at 14.  Rather, the ALJ explained that he relied on Sutherland's "statements regarding Mr. Fife's tuberculosis

16

evaluation" to rule out tuberculosis as an explanation for the abnormalities on Fife's lungs reflected in his chest X-rays.  Id.[7]

Second, Yogi Mining contends that Sutherland's opinion could not be relied upon because it was not sufficiently reasoned and documented.  In fact, however, ALJ Decision II carefully articulated that the ALJ viewed Sutherland's medical judgments to be well-reasoned and documented because they "follow[ed] logically from his observations" and were amply supported by data adequate to support his conclusions.  ALJ Decision II at 14.  The ALJ observed that Sutherland's opinion was based on (1) Fife's medical history; (2) Fife's occupational history; (3) Sutherland's own readings of Fife's X-rays, as well as the readings of those X-rays by Dr. Scott; and (4) Sutherland's observations, made on the basis of his own testing and examination of Fife.  ALJ Decision II at 14.  The ALJ concluded that, because "Dr. Sutherland has been the claimant's treating physician for approximately seven years, and because Dr. Sutherland is the only physician of record who has evaluated the claimant for tuberculosis, I accord great weight to [his] well documented and well reasoned opinion."  Id.

---

[7]Although not specifically mentioned by the ALJ, the administrative record contains Dr. Sutherland's note indicating that, on April 5, 1999, he gave Fife a skin test, known as a "tine," for tuberculosis.  Sutherland also indicated that a "negative" result on this test was received on April 8, 1999. Sutherland's note was faxed to the ALJ on October 21, 1999.

17

In its review of ALJ Decision II, the Board concluded that the ALJ's reliance on Dr. Sutherland's observations over a seven-year period was rational and within his discretion. Board Decision II at 6. In these circumstances, we find no error in that conclusion.

B.

Yogi Mining next maintains that the ALJ failed to articulate sufficient reasons for discrediting the medical opinions of the Yogi Mining doctors. The Board concluded, however, that the ALJ had provided valid, rational reasons for according less weight to the judgments offered by those doctors, and our review of the record reveals no error in that assessment. See Board Decision II at 8.

The ALJ, in ALJ Decision II, explained that he was according less weight to Drs. Scott and Wheeler because their opinions were equivocal on the abnormalities shown on Fife's X-rays, in that they could only opine that such spots were "compatible with" or "probably" tuberculosis. ALJ Decision II at 14. Moreover, Scott and Wheeler both acknowledged that Fife's X-rays could indicate pneumoconiosis. Id. at 15. As the ALJ explained, "not only were the physicians unable to offer a clear explanation for the abnormalities revealed by Mr. Fife's chest x-rays, Drs. Wheeler and Scott also were unable to unequivocally conclude that Mr. Fife does not suffer from pneumoconiosis." Id. at 15. Although Scott and

18

Wheeler were both dually qualified (B/BCR), the ALJ considered their opinions to be inconclusive, and he chose to rely instead on the unequivocal diagnoses of complicated pneumoconiosis by two other experts: Dr. Alexander, who was also dually qualified (B/BCR), and Dr. Forehand, a B reader. Id. at 15.[8]

Next, the ALJ explained that he had discounted Dr. Dahhan's opinion because it was not well-reasoned. ALJ Decision II at 15-17. Initially, Dahhan read Fife's July 28, 1999 X-ray to be positive for pneumoconiosis, but he altered his view after being provided with the readings by Drs. Scott and Wheeler of Fife's July 28, 1999 CT scan. Id. at 16. In changing his opinion, however, Dahhan failed to reconcile his view on the absence of pneumoconiosis with the contrary findings of Drs. Alexander, Sargent, and Forehand, who had each found evidence of pneumoconiosis. Id. at 16-17. Dahhan also failed to reconcile his opinion that Fife "retained the respiratory capacity" to work with the contrary findings of Drs. Forehand and Sutherland, who opined that Fife's extensive lung injury rendered him totally disabled. Id. at 16.[9] Moreover, as the ALJ pointed out, although Dahhan

_____

[8]That the ALJ evenhandedly applied his analysis is further revealed by the fact that the ALJ discounted the opinion of Dr. Sargent — who examined Fife for the OWCP and found simple pneumoconiosis — because his diagnosis was deemed inconclusive. ALJ Decision II at 15.

[9]The ALJ explained that he discounted Dahhan's second opinion because it was a consultative opinion, which is supposed to be "a distillation of an array of medical evidence, some produced by the

opined that any abnormalities suffered by Fife were probably caused by tuberculosis, he apparently failed to properly consider that Fife's sole evaluation for tuberculosis — performed by Dr. Sutherland — found no evidence of the disease. Id. at 16-17.[10] The ALJ observed that Dahhan's "failure to address the tension in his second opinion between the weight of the contrary evidence and his ultimate conclusion is so substantial that his opinion is not adequately reasoned." Id. at 16. In these circumstances, the ALJ was entitled to discount Dahhan's opinion.

Finally, the ALJ discounted the opinion of Dr. Tuteur for Yogi Mining because the ALJ found that it was vague and not fully reasoned. ALJ Decision II at 17-18. In so doing, the ALJ observed that Tuteur had failed to explain or support his conclusion that the medical evidence "suggest[s] the absence of pneumoconiosis" and the presence of an infection. Id. at 18. Moreover, Tuteur did not independently evaluate Fife's X-rays or CT scan but was relying on

_____

opinions of other doctors, into a comprehensive opinion that weighs the totality of the evidence. The failure of Dr. Dahhan's report to do just that leads me to accord his opinion little weight." ALJ Decision II at 16.

[10]While Dr. Sutherland's report was listed by Dr. Dahhan as one that he had considered, the ALJ explained, in that regard, that "the mere listing of a report does not demonstrate adequate consideration alone and, more importantly, a doctor's failure to explicitly discuss the lone piece of evidence available to him that explicitly contradicts his opinion is demonstrative of an opinion that is poorly reasoned." ALJ Decision II at 17.

20

the reports of Scott and Wheeler, which the ALJ deemed inconclusive and, therefore, less probative. Id. at 17-18.

In contrast to his rejection of the equivocal opinions of Yogi Mining's doctors, the ALJ explained that he accorded "great weight" to the views of Dr. Forehand, who had examined Fife for the OWCP and unequivocally opined that "complicated pneumoconiosis is the sole factor contributing to his total pulmonary disability." ALJ Decision II at 7, 18. Forehand's opinion was "supported by specific physical examination findings, the miner's employment and smoking histories, and a chest X-ray" taken by Forehand on February 12, 1999. Id. at 18. While Forehand suggested that Fife be tested for tuberculosis, he made clear his view that any such resulting diagnosis would have been in addition to his diagnosis of pneumoconiosis. See 20 C.F.R. § 718.201(b) (including within legal definition of pneumoconiosis "any chronic pulmonary disease . . . substantially aggravated by" coal dust). The ALJ also accorded weight to Dr. Alexander's interpretation of Fife's most recent X-ray as positive for complicated pneumoconiosis. ALJ Decision II at 18.

The Board, in reviewing ALJ Decision II, concluded that the ALJ was within his discretion in ruling as he did and, in particular, in deeming the opinions of Drs. Forehand and Alexander as the more probative evidence presented. Board Decision II at 8. Because it is the province of the ALJ to determine the weight to be

21

accorded such evidence, we also conclude that, in these circumstances, the ALJ and the Board did not err.

C.

Finally, Yogi Mining contends that the ALJ failed to consider the relevant CT scan evidence relating to Fife's claim. The Board concluded, however, that the ALJ had properly considered all the relevant evidence, and that he had satisfied his duty of explanation. The Board's conclusion on this point is confirmed by our review. Board Decision II at 3. Contrary to Yogi Mining's contentions, an ALJ is not required to give determinative weight to CT scan readings; he is only obliged to weigh such readings against the other relevant evidence. See Consol. Coal Co. v. Dir., OWCP, 294 F.3d 885, 893 (7th Cir. 2002) (recognizing the "absence of any regulatory requirement that a negative CT scan must trump all other evidence"). Furthermore, ALJ Decision I, which is explicitly incorporated by reference in ALJ Decision II, satisfactorily explained that the ALJ was according "little evidentiary weight" to the CT scan readings of Drs. Wheeler and Scott because both had interpreted the scans as showing evidence of tuberculosis, while Fife had, in fact, tested negative for the disease. ALJ Decision I at 22. The ALJ also explained that he gave little weight to Dr. Dahhan's evaluation of Fife's CT scan of July 28, 1999, because

22

Dahhan had not adequately explained why he had rejected the contrary evidence of the other doctors.  ALJ Decision II at 16.

An ALJ's duty of explanation is fully satisfied "[i]f a reviewing court can discern what the ALJ did and why he did it." Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (internal quotation marks omitted).  The Board concluded that this test was satisfied, i.e., that the ALJ had properly considered the CT scan evidence and fulfilled his duty of explanation.  Board Decision II at 4.  In these circumstances, we find no error in that assessment.

IV.

Pursuant to the foregoing, we affirm the decision of the Board affirming the ALJ's award of black lung benefits to Fife.

AFFIRMED