**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WESTMORELAND COAL COMPANY,
INCORPORATED,

*Petitioner,*

v.

BOBBY R. COOK; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents.*

No. 02-1917

On Petition for Review of an Order
of the Benefits Review Board
(01-864-BLA)

Submitted: October 1, 2003

Decided: February 17, 2004

Before LUTTIG, MOTZ, and GREGORY, Circuit Judges.

Reversed by unpublished per curiam opinion.

## COUNSEL

Douglas Allan Smoot, JACKSON & KELLY, Charleston, West Virginia; Kathy Lynn Snyder, JACKSON KELLY, PLLC, Morgantown, West Virginia, for Petitioner. Bobby R. Cook, Fenwick, West Virginia; Patricia May Nece, Barry H. Joyner, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Westmoreland Coal Company seeks review of the decision and order of the Benefits Review Board affirming the administrative law judge's award of black lung benefits pursuant to 30 U.S.C. §§ 901-945 (2000). Because our review of the record discloses that the ALJ's decision is not supported by substantial evidence, we reverse the award of benefits.

We review decisions of the BRB to determine whether the BRB properly found that the ALJ's decision was supported by substantial evidence and was in accordance with law. *See Doss v. Dir., Office of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir. 1995). In making this determination, we conduct an independent review of the record in deciding whether the ALJ's findings are supported by substantial evidence. *See Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is more than a scintilla, but only such evidence that a reasonable mind could accept as adequate to support a conclusion. *See Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997). Subject to the substantial evidence requirement, the ALJ has the sole authority to make credibility determinations and resolve inconsistencies or conflicts in the evidence. *See Grizzle v. Pickands Mather & Co.*, 994 F.2d 1093, 1096 (4th Cir. 1993). An ALJ, however, may rely only on a medical opinion that constitutes a reasoned medical judgment. *See Freeman United Coal Mining Co. v. Cooper*, 965 F.2d 443, 448 (7th Cir. 1992).

To establish that he is entitled to black lung benefits in a case under Part 718, a miner must prove: "(1) he has pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir.

1998). A claimant may establish the existence of pneumoconiosis by means of (1) chest x-rays; (2) biopsy or autopsy evidence; (3) invocation of the presumptions at 20 C.F.R. §§ 718.304 - 718.306; or (4) medical opinion evidence. *See* 20 C.F.R. § 718.202(a) (2003). In findings that are not challenged on appeal, the ALJ determined that Cook failed to establish the existence of pneumoconiosis by x-ray evidence, that there was no biopsy or autopsy evidence, and that the presumptions of 20 C.F.R. §§ 718.304 - 718.306 were not applicable to Cook's claim. Therefore, the only basis upon which Cook may establish that he suffers from pneumoconiosis is medical opinion evidence pursuant to 20 C.F.R. § 718.202(a)(4) (2003).

In finding the medical opinion evidence sufficient to establish that Cook suffered from pneumoconiosis, the ALJ relied primarily upon the opinion of Dr. Walker, a chest surgeon who performed surgery on Cook in August 1986. In his post-operative report, Dr. Walker noted that "[a]t thoracotomy, the right lung was black. There were small, palpable nodules throughout. The right lung fissures were approximately fifty percent fused. The lung was emphysematous." On Cook's discharge from the hospital following surgery, Dr. Walker's final diagnosis was a right parasternal hernia and pneumoconiosis. In addition to Dr. Walker, doctors Rasmussen, Diaz, and Aguilar also diagnosed pneumoconiosis. Doctors Fino, Zaldivar, and Hippensteel concluded that Cook did not suffer from the disease, although Dr. Zaldivar, in a supplemental report, acknowledged that "[t]he report given by Dr. Walker that at the time of the thoracotomy the lungs appeared black and there were palpable nodules may indicate that coal workers' pneumoconiosis might be present that is not seen radiographically."

The ALJ concluded that Dr. Walker's opinion, supported by the opinions of doctors Rasmussen, Diaz, and Aguilar, and Dr. Zaldivar's comment, was sufficient to outweigh both the preponderance of x-ray readings that were negative, and the contrary opinions of doctors Fino, Zaldivar, and Hippensteel. The ALJ accorded great weight to Dr. Walker's opinion because Dr. Walker had served as the Chairman of the West Virginia Occupational Pneumoconiosis Board and therefore possessed extensive experience in evaluating pneumoconiosis, and more importantly, Dr. Walker had the exclusive opportunity to physically observe and examine one of Cook's lungs during surgery.

Our review of the record leads us to conclude that, although it is a close question, the ALJ properly weighed the evidence and concluded that it established that Cook suffered from pneumoconiosis.

A miner is totally disabled due to pneumoconiosis if the disease

is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:

(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or

(ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c)(1) (2003). If the presumption at § 718.304 does not apply, a claimant may establish the existence of a totally disabling respiratory or pulmonary impairment by means of (1) pulmonary function studies; (2) arterial blood gas studies; (3) evidence of cor pulmonale; or (4) medical reports. *See* 20 C.F.R. § 718.204(b) (2003). Such evidence, however, only establishes disability "[i]n the absence of contrary probative evidence." *Id.* Thus, if evidence of one type tends to establish disability, it must then be weighed together with all other evidence relevant to the issue of total disability for a determination as to whether the evidence, as a whole, establishes a totally disabling respiratory or pulmonary impairment. *See Lane v. Union Carbide Corp.*, 105 F.3d 166, 171 (4th Cir. 1997); *Walker v. Director, Office of Workers' Compensation Programs*, 927 F.2d 181, 184-85 (4th Cir. 1991). The ALJ determined, and the BRB affirmed, that the pulmonary function tests and arterial blood gas studies did not establish the existence of a respiratory disability, and the record in this case does not contain any evidence of cor pulmonale. Therefore, Cook must demonstrate that he is totally disabled by pneumoconiosis through medical opinion evidence.

Initially, we note, as the ALJ recognized, the objective testing did not yield results that indicated the presence of a disabling respiratory

condition. In fact, the pulmonary function and arterial blood gas tests in the record yielded measures of Cook's respiratory capability significantly above the levels established by the regulations as indicating total disability. Nevertheless, the ALJ concluded that the opinions of Doctors Rasmussen, Diaz, and Aguilar that Cook was totally disabled by puemoconiosis outweighed the contrary opinions of Doctors Zaldivar, Fino, and Hippensteel.

In addressing total disability, the ALJ stated:

The laboratory studies were non-qualifying, which lends support to the physicians who conclude no total disability is present. In contrast, however, the reports which conclude Claimant is totally disabled are based on other tests, including exercise stress tests as well as Dr. Diaz's status as Claimant's treating physician. In this capacity, he had the unique opportunity to examine Claimant on multiple occasions. In addition, the physicians who concluded Claimant is totally disabled also agreed pneumoconiosis was present. That finding was firmly supported by Dr. Walker's surgical examination of the actual lungs, and, thus, their correct conclusion regarding the presence of pneumoconiosis lends support to their conclusions regarding the miner's pulmonary capacity.

We find this analysis flawed in three significant respects. First, the record contains no evidence of the "other" tests mentioned by the ALJ as supporting the opinions of Doctors Rasmussen, Diaz, and Aguilar. Rather, the ALJ interpreted Dr. Rasmussen's discussion of the exercise portion of the arterial blood gas tests as indicating that another type of test was performed. This is factually incorrect, as the blood gas tests uniformly yielded results that did not establish the existence of respiratory or pulmonary disability. Second, the ALJ's deference to the opinion of Dr. Diaz based upon his status as Cook's treating physician is unwarranted. Our review of Dr. Diaz's reports reveal that they are not supported by objective reasoning or analysis, but merely offer conclusory statements of his opinions and therefore do not constitute reasoned medical opinions. We have previously cautioned against such unwarranted deference to a treating physician's opinion. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir.

1997). Third, the ALJ's conclusion that because the doctors were correct in diagnosing pneumoconiosis, they must also be correct in opining that Cook is totally disabled, reflects a misunderstanding of the distinct inquiries into the existence of the disease and whether the disease results in total respiratory disability that are required in adjudicating black lung cases.

In addition to Dr. Diaz, the ALJ also relied on Dr. Aguilar, who examined Cook in May 1986. Dr. Aguilar diagnosed pneumoconiosis, pulmonary fibrosis and emphysema, atelectasis of the lower right lung, and osteoarthritis of the spine and left shoulder. He opined that Cook would be restricted to "sedentary or at least no more than very light physical work." Dr. Aguilar conducted pulmonary function tests, which did not yield values indicating respiratory disability. He also noted that

> I reviewed the pulmonary function tests performed by Dr. Rasmussen in 1974 which showed minimal obstructive ventilatory insufficiency with an estimated loss of functional capacity between 50 and 60%. I expect that that loss may have increased by this time, although the spirometry obtained on May 14, 1986 does not bear this out.

We conclude that the ALJ erred in finding that this opinion demonstrated that Cook was totally disabled by pneumoconiosis. Although Dr. Aguilar acknowledged that he had reviewed past reports and that he expected Cook's pulmonary capacity to be diminished, Dr. Aguilar failed to explain how, given the objective testing results that indicated only mild obstruction, he concluded that Cook was restricted to light sedentary work. Moreover, Dr. Aguilar's report does not adequately distinguish the relative contributions of the diagnosed respiratory conditions and Cook's osteoarthritis to his overall condition.

The last doctor on which the ALJ relied in reaching the total disability determination, Dr. Rasmussen, examined Cook in 1974, 1979, and again in 1986. On April 12, 1974, Dr. Rasmussen conducted pulmonary function and arterial blood gas tests on Cook, and reported:

> This patient exhibited minimal ventilatory insufficiency, moderate impairment in oxygen transfer, and an abnormal ventilatory response with exercise.

This patient would appear to be incapable of performing steady work beyond strictly light work levels. A numerical estimate of the overall loss of functional capacity in this case would be placed in the neighborhood of 50-60%.

On May 4, 1979, Dr. Rasmussen again conducted pulmonary function and arterial blood gas tests on Cook. Dr. Rasmussen reported

This patient exhibited minimal ventilatory insufficiency, moderate impairment in oxygen transfer, an abnormal ventilatory response with exercise, and an abnormal cardiovascular response with exercise.

This patient would appear to be incapable of performing steady work beyond strictly light work levels. A numerical estimate of the overall loss of functional capacity in this case would be placed in the neighborhood of 65%.

Finally, on May 27, 1986, Dr. Rasmussen examined Cook, and again conducted pulmonary function and arterial blood gas tests. In the block labeled "Medical Assessment" on the examination report form, Dr. Rasmussen stated "[t]his patient has moderate impairment in respiratory functional capacity." He concluded that "[t]hese studies indicate moderate impairment in respiratory functional capacity as reflected by the obstructive ventilatory insufficiency and the impairment in gas exchange at rest and during exercise." Notably, Dr. Rasmussen did not estimate the amount of reduction in Cook's functional capacity in this last report.

We conclude that the ALJ erred in giving Dr. Rasmussen's opinions probative weight on the question of that disability. First, none of Dr. Rasmussen's reports affirmatively state that Cook is totally disabled from a respiratory standpoint. Further, contrary to Dr. Rasmussen's opinions in 1974 and 1979 that Cook had lost the majority of his functional capacity and was restricted to only light work, Cook in fact continued to perform very demanding physical labor in the mines until he retired in 1986. Finally, Dr. Rasmussen also failed to explain his conclusion that Cook was limited to light work given the objective testing that demonstrated the absence of any respiratory disability.

With respect to the total disability inquiry, the ALJ's reasoning was based upon factual inaccuracies that resulted from an improper evaluation of the medical opinions such that "no 'reasonable mind' could have interpreted and credited the [medical opinions] as the ALJ did." *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 764 (4th Cir. 1999). Because there remains no evidence upon which to base a finding of entitlement to benefits, we reverse the award of benefits. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*REVERSED*